# STATE OF MICHIGAN

# COURT OF APPEALS

JULIE B. KING,

        Plaintiff-Appellant/Cross-Appellee,

v

CENTER FOR PLASTIC & RECONSTRUCTIVE
SURGERY P.C. and PAUL H. IZENBERG, M.D.,

        Defendants-Appellees/Cross-
        Appellants

and

CENTER FOR PLASTIC & RECONSTRUCTIVE
SURGERY P.L.C.,

        Defendant.

UNPUBLISHED
September 22, 2016

No. 328018
Washtenaw Circuit Court
LC No. 13-000316-NH

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

        Plaintiff, Julie B. King, appeals as of right the circuit court's June 4, 2015 order granting summary disposition to defendants, Center for Plastic & Reconstructive Surgery, P.C., Center for Plastic & Reconstructive Surgery P.L.C.,[1] and Paul H. Izenberg, M.D., pursuant to MCR 2.116(C)(10). On appeal, plaintiff challenges this order as well as the circuit court's April 6, 2015 order granting defendants' motion to strike plaintiff's expert witness's testimony. Defendants cross-appeal as of right the circuit court's June 4, 2015 order as well, raising an alternative ground to support the circuit court's decisions striking plaintiff's expert witness's testimony and granting their motion for summary disposition. Because we are unable to conclude whether the circuit court abused its discretion in granting defendants' motion to strike

---

[1] The parties stipulated to dismiss Center for Plastic & Reconstructive Surgery, P.L.C. According to defendants' answer, "the P.L.C. was not in existence in 2011." Thus, any reference to "defendants" refers only to Center for Plastic & Reconstructive Surgery, P.C. and Dr. Izenberg.

-1-

Dr. Rosenberg's testimony as unreliable pursuant to MRE 702 and MCL 600.2955, we are compelled to remand this matter for further proceedings.

This medical-malpractice lawsuit arises out of an injury to plaintiff's lateral femoral cutaneous nerve (LFCN) during a revision abdominoplasty surgery performed on plaintiff by Dr. Izenberg on May 19, 2011. It appears undisputed that Dr. Izenberg partially severed plaintiff's LFCN during that surgery, and plaintiff reported burning sensations and numbness immediately thereafter. Dr. Izenberg's attempts to repair the LFCN in the days following the surgery proved unsuccessful, and the record reflects that plaintiff will likely be required to treat the burning sensations and numbness with medication and injections indefinitely.

Plaintiff subsequently filed this lawsuit against defendants, alleging that Dr. Izenberg's conduct during the revision abdominoplasty surgery constituted medical malpractice. Specifically, plaintiff alleged that Dr. Izenberg was negligent in partially severing the LFCN, that he breached the applicable standard of care in doing so, and that plaintiff suffered a variety of lifelong injuries as a result of this conduct. With her summons and complaint, plaintiff included an Affidavit of Meritorious Claim by Michael H. Rosenberg, M.D., F.A.C.S. In that affidavit, Dr. Rosenberg opined that Dr. Izenberg breached the applicable standard of care during the May 19 revision abdominoplasty surgery by partially severing the LFCN and that this breach caused plaintiff's injuries.

Defendants filed their answer and affirmative defenses, asserting that Dr. Izenberg's conduct during the May 19 revision abdominoplasty surgery did not constitute medical malpractice. Specifically, defendants, while primarily asserting that the complaint was "inadequate and insufficient," "den[ied] any and all allegations or inferences disregarding duties and obligations, variance with the national standards of care, acts and omissions of negligence or malpractice in the premises . . . ." With their answer and affirmative defenses, defendants included an Affidavit of Meritorious Defense by Paul S. Cederna, M.D. In that affidavit, Dr. Cederna opined Dr. Izenberg did not breach the applicable standard of care during the May 19 revision abdominoplasty surgery and took proper steps in an attempt to correct it after plaintiff's postoperative symptoms arose.

As plaintiff's sole expert,[2] Dr. Rosenberg's testimony was crucial and is at the center of the issues raised by both parties on appeal. Dr. Rosenberg was deposed *de bene esse*[3] on

---

[2] In her witness list, plaintiff identified Dr. Rosenberg and "All treating physicians of Julie King, including but not limited to Fasail Ahmad, M.D." as her only expert witnesses. We are unable to find any indication in the record that plaintiff intended to call any expert witnesses other than Dr. Rosenberg to establish the elements of negligence.

[3] Plaintiff's counsel stated at the beginning of the December 15 deposition that Dr. Rosenberg's testimony on that date was "to be used at his trial in March of 2015 in place of his live appearance at the trial." While he now claims that he may well have elected to instead present Dr. Rosenberg as a live witness at trial, it seems clear, at least in our view, that counsel intended to present the December 15 deposition testimony only.

December 15, 2014. In his December 15 deposition, Dr. Rosenberg testified that he was board certified in general surgery, that he was licensed to practice medicine in New York and in military installations, that he specializes in plastic and reconstructive surgery and has done so for approximately 20 years, that he obtained his undergraduate and medical degrees from Columbia University, that he did his residency at Columbia Presbyterian Medical Center in both general surgery and plastic surgery, and that he had a publication on abdominoplasty. As it relates to revision abdominoplasty surgeries, Dr. Rosenberg testified that it is "a percentage of [his] work" but "not the major component" of it.

Dr. Rosenberg testified that, as it relates to this case, he had "reviewed the records that [he] was sent from Dr. Izenberg's office regarding Julie," "Dr. Sturm's records, mostly related to cardiology and clearance for surgery," "Dr. Beird's records who had performed both the original abdominoplasty back . . . in 2008 and a partial revision on a portion of the scar later on," "the neuro pain consultant records, most of Dr. Linninger," "the Flint Neurological Center records of Dr. Faisel," "the back pain and sports rehab specialist records of Dr. Atty," "the complaint," "the deposition of Dr. Izenberg," "the deposition of Julie," "the deposition of . . . her fiancé, Justin Dennis Henry," "an affidavit of meritorious defense of Dr. Cerdena," "the record of [his] own deposition," and "some background material from an anatomical text."

Based on his review of the materials described above as well as his experience, Dr. Rosenberg testified as follows when asked for his "criticisms" of Dr. Izenberg's conduct during the May 19 revision abdominoplasty surgery: "In the course of the revision abdominoplastly Dr. Izenberg injured a major branch or portion of the lateral femoral cutaneous nerve which directly led to symptoms of pain, burning, numbness that Julie will have to deal with her entire life." Dr. Rosenberg testified that Dr. Izenberg deviated from the applicable standard of care during the May 19 revision abdominoplasty surgery when he "expose[d] th[e LFCN] to injury and then injure[d] it." As to how this occurred, Dr. Rosenberg opined as follows: "Either he was dissecting deeper than he thought he was, he may have misjudged the level of the facia and where he was, or he placed his suture significantly deeper as he was trying to anchor the upper scar down towards the . . . inferior or caudal area of the body." Ultimately, Dr. Rosenberg was clear in opining that the LFCN "has no role to play in this operation[,]" that "[t]his particular nerve should not have been injured in this particular surgery," that the LFCN "is not in the operative field and should not be subject to injury," and that Dr. Izenberg injured the LFCN by "dissecting where he . . . did not need to be," i.e., "underneath the fascia[.]"

Defendants moved to strike Dr. Rosenberg's December 15 testimony approximately two months later. According to their motion, defendants argued that Dr. Rosenberg's testimony was unreliable under MRE 702 and MCL 600.2955 because he was "unable to cite any literature which supports his bold assertion that injury to this nerve in this type of procedure is negligent and malpractice," because "[h]e did not offer any testimony indicating a reliable basis for his opinion," because "his testimony is contrary to known medical principles and the body of literature on the subject he comments upon," and because, "[d]uring the entire time of Dr. Rosenberg's testimony, not once did he give any reliable data, studies, or information upon which he based his opinions or support his opinions." In essence, defendant's position was simple—Dr. Rosenberg's testimony was unreliable because literature, data, studies, or other similar materials do not support it.

Plaintiff responded, arguing that Dr. Rosenberg admittedly did not "cite any literature but this was because it was unnecessary, pointless, and probably non-existent" given the obvious nature of Dr. Izenberg's negligence. Plaintiff argued that Dr. Rosenberg's opinion was based on his review of the medical and legal records in this case as well as his knowledge, skill, education, training, and experience, and that "[t]his background [wa]s much more than sufficient to form an adequate foundational basis for his testimony in this matter." Plaintiff also requested that she be awarded attorney fees and costs pursuant to MCL 600.2591 and MCR 2.625(A)(2), arguing that plaintiff's motion was nothing more than frivolous.

Oral argument on defendants' motion to strike was held on March 19, 2015, and the parties' arguments differed quite a bit from what we perceive as those originally raised by the parties in their pleadings. While defendants did argue that Dr. Rosenberg's testimony was unreliable because it was not supported by literature, their argument focused on a distinction between the "typical" location of the LFCN and the location of plaintiff's LFCN. According to defendants, Dr. Rosenberg's "whole theory" was unreliable because, according to Dr. Izenberg's operative records, plaintiff's LFCN was not located in a "typical" location. Because Dr. Rosenberg's testimony was limited to cases involving the "normal" location of the LFCN, his testimony was simply too unreliable to present to a jury. Plaintiff countered, arguing that the location of the LFCN is entirely irrelevant:

> Doesn't make a difference. The nerve is below the fascia. Even if it's . . . in a wrong position it's below the fascia and the surgery [sic] nerve goes below the fascia. I mean that's really the bottom line in this case. You're supposed to never go below the fascia. The whole operation occurs above the fascia. That nerve never, never occurs above the fascia. It's that simple.

The circuit court granted defendants' motion to strike, explaining, in full, as follows:

> [B]ut I think your argument makes sense. I don't think that this physician -- I don't think there's any evidence to the contrary that the nerve was located -- which the person who was there said it was -- that it is variant. It appears to be in an extreme location ah -- and there's been no testimony that given that variance, this isn't a normal procedure, that this doctor violated the standard of care. Your motion is granted.

Thus, apparently based solely on Dr. Izenberg's testimony that the LFCN was "in an extreme location" and "variant," the circuit court determined that Dr. Rosenberg's testimony was wholly unreliable under MRE 702 and MCL 600.2955 and excluded it in full. A written order submitted by defendants pursuant to the seven-day, MCR 2.602(B), rule reflecting the circuit court's decision was entered on April 6, 2015.[4]

---

[4] The circuit court denied plaintiff's motion for reconsideration of the April 6 order, and this Court subsequently dismissed plaintiff's appeal from that order for lack of jurisdiction, i.e., because the April 6 order was not a final order appealable as of right. *King v Ctr for Plastic &*

Relying on the circuit court's April 6 order granting their motion to strike Dr. Rosenberg's testimony, defendants then moved for summary disposition pursuant to MCR 2.116(C)(10), and the circuit court granted that motion. A written order submitted by defendants pursuant to the seven-day rule reflecting the circuit court's decision was entered June 5, 2015, and this appeal followed.

A circuit court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). A circuit court abuses its discretion when it chooses an outcome that falls beyond the range of principled outcomes. *Id*. "The admission or exclusive of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion." *Id*. A circuit court's interpretation and application of statutes and court rules in the process of determining whether evidence is or is not admissible is reviewed de novo. *Id*. Likewise, a circuit court's decision on a party's motion for summary disposition is also reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate only where no genuine issue of material fact is established, and the moving party is entitled to judgment as a matter of law. *Id*. at 120.

On appeal, plaintiff argues, amongst other things, that the circuit court abused its discretion in excluding Dr. Rosenberg's testimony as unreliable pursuant to MRE 702 and MCL 600.2955.

In medical malpractice cases, plaintiffs must establish the following: (1) the applicable standard of care, (2) that the applicable standard of care was breached by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. *Woodard v Custer*, 473 Mich 1, 6; 702 NW2d 522 (2005). To do so, expert testimony is generally required. *Id*. A party offering expert testimony in a medical-malpractice lawsuit must demonstrate that the expert is qualified pursuant to MRE 702 and MCL 600.2955.

MRE 702 provides as follows:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliable to the facts of the case.

MRE 702 "requires the circuit court to ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable." *Elher*, 499 Mich at 22. See also *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 589; 113 S Ct 2786; 125 L Ed 2d 469 (1993)

---

*Reconstructive Surgery PLC*, unpublished order of the Court of Appeals, entered June 9, 2015 (Docket No. 328018).

(providing that a "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

MCL 600.2955(1) similarly provides as follows:

In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

In sum, MRE 702 and MCL 600.2955 require that the trial court engage in a thorough analysis to determine whether an expert's testimony is sufficiently reliable to be presented to a jury.

After reviewing the record in this case, we are simply unable to conclude whether the circuit court abused its discretion in granting defendants' motion to strike Dr. Rosenberg's testimony as unreliable pursuant to MRE 702 and MCL 600.2955. "An evidentiary hearing under MRE 702 and MCL 600.2955 is merely a *threshold* inquiry to ensure that the trier of fact is not called upon to rely in whole or in part on an expert opinion that is only masquerading as science." *Chapin v A & L Parts, Inc*, 274 Mich App 122, 139; 732 NW2d 578 (2007) (emphasis in original); see also *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004) (providing that "MRE 702 mandates a searching inquiry" and "[c]areful vetting of all aspects of expert testimony"). In this case, a review of the circuit court's decision (quoted in full above) reflects that the circuit court did not mention, much less address or carefully analyze,

-6-

MRE 702, MCL 600.2955, or *Daubert*. Rather, the circuit court merely adopted Dr. Izenberg's testimony that the location of plaintiff's LFCN was variant and found that determination dispositive. Thus, the requisite threshold inquiry was lacking. In short, we have no idea whether the circuit court found Dr. Rosenberg reliable or not. Instead, we only know that the circuit court believes that the location of the LFCN controls whether a surgeon is negligent if he or she partially severs it during a revision abdominoplasty surgery. Aside from the fact that this, as far as we can tell, is a question of fact for a jury to determine, we must point out that there is *nothing* in the record—medical, legal, or otherwise—to conclusively support a conclusion that the location of the LFCN is, in and of itself, dispositive of all issues raised in this case.[5] But, even more importantly, it is certainly not dispositive of the issue raised by both parties before the circuit court and on appeal—whether Dr. Rosenberg's testimony was sufficiently reliable under MRE 702 and MCL 600.2955.

Because we are unable to conclude whether the circuit court abused its discretion in granting defendants' motion to strike Dr. Rosenberg's testimony as unreliable pursuant to MRE 702 and MCL 600.2955, we are compelled to remand this matter for further proceedings. On remand, the circuit court is to address defendants' argument that Dr. Rosenberg's testimony should be struck as unreliable because it is not supported by literature based on the record as created by the parties under MRE 702, MCL 600.2955, and *Daubert*. Should the circuit court determine that his testimony was unreliable, it should grant defendants' motion, and proceedings should continue accordingly. Should the circuit court determine that his testimony was reliable, it should deny defendants' motion, and proceedings should continue accordingly.

It is important to make clear that we are not expressing a view as to whether plaintiff has carried her burden in proving that Dr. Rosenberg's testimony was sufficiently reliable to be presented to the jury, nor are we expressing a decision as to whether plaintiff will be able to create a genuine issue of material fact in regard to the elements of her malpractice-claim based

---

[5] To be clear, neither plaintiff nor defendants have provided anything to support a conclusion that the location of the LFCN is, in and of itself, dispositive other than the conflicting testimony of their own experts. Plaintiff provided Dr. Rosenberg's testimony that the location of the LFCN is irrelevant based on his opinion that Dr. Izenberg should not have operated below the fascia at all. Defendants provided Dr. Izenberg's testimony that the location of plaintiff's LFCN was so vastly different from its typical location that he could not have known he would have partially severed it when stitching to the fascia. Defendants also provided medical literature that they claimed directly contradicts Dr. Rosenberg's opinion before the circuit court. Their claim in this regard is, at best, mistaken and, at worst, deliberately misleading. While defendants claimed that "[t]he accepted literature states there is an incidence of injury to *this* lateral femoral cutaneous nerve during *this* procedure" (emphasis added), the only medical literature presented by defendants *expressly excludes* "revisional (correctional procedures after a primary procedure)," i.e., the only procedure at issue in this case. While defendants also claimed before the circuit court that their "experts are gonna say that revisional surgeries are even harder and the incidents of nerve damage from those even increases, so it's more than what it is for general abdominoplasties," there is absolutely nothing in the record to support this claim.

solely on Dr. Rosenberg's testimony. Instead, we are choosing to remand this matter for further proceedings before the circuit court because, based on the record as presented before us, we are simply unable to conclude whether the circuit court's ultimate decision reflects an exercise of its gatekeeping function that falls within the range of principled outcomes.

Accordingly, we vacate the circuit court's April 6, 2015 order granting defendants' motion to strike plaintiff's expert witness's testimony and its June 4, 2015 order granting defendants' motion for summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien