# STATE OF MICHIGAN

# COURT OF APPEALS

HELEN LEVENSON,

Plaintiff-Appellee,

v

CITY OF ANN ARBOR,

Defendant-Appellant.

UNPUBLISHED
December 26, 2017

No. 336231
Washtenaw Circuit Court
LC No. 15-001284-NO

Before: MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, City of Ann Arbor (the city), appeals as of right the trial court's order denying the city's motion for summary disposition under MCR 2.116(C)(7) in this action involving allegations by plaintiff that she tripped on a defect in a city sidewalk, causing her to fall and sustain injuries. The city asserts that it is protected by governmental immunity and that plaintiff's reliance on the sidewalk exception to immunity under MCL 691.1402a fails as a matter of law. The city contends that, for purposes of MCL 691.1402a, plaintiff did not submit adequate *admissible* evidence to show the pre-accident existence of the alleged defect for 30 days, actual or constructive knowledge of the defect by the city, a vertical discontinuity defect of two or more inches, and a dangerous sidewalk condition of a character unrelated to a vertical discontinuity. The focal point of the city's argument is that the opinions expressed by plaintiff's expert that would otherwise support application of the sidewalk exception are not admissible under MRE 702. We affirm.

## I. BACKGROUND

## A. THE COMPLAINT

In December 2015, plaintiff filed an action against the city, alleging in the complaint that "[o]n September 7, 2014, while on the sidewalk adjacent to the property known as the Jolly Pumpkin located at 311 S. Main Street in the [c]ity . . ., the [p]laintiff . . . did trip and fall as a direct and proximate result of a depressed, cracked, broken, and unlevel section of concrete." For ease of reference and simplicity's sake, and consistent with the four photographs in the lower court record, we shall refer to the alleged defect as the "hole" in the sidewalk. Plaintiff alleged that the city knew or should have known about the hole and that the city breached its duty of care owed to plaintiff in numerous ways, including a failure to warn of the hazard and a failure to maintain the sidewalk in a reasonably safe condition. Plaintiff contended that she suffered,

-1-

amongst other injuries, "[a] calcaneal fracture requiring an open reduction with internal fixation," as directly and proximately caused by the breaches of the duty of care. Plaintiff asserted that she incurred economic and noneconomic damages as a result of the fall.

## B. DOCUMENTARY EVIDENCE

The parties submitted documentary evidence in support of their respective positions with regard to the city's motion for summary disposition. The evidence reflected that in November 2011, the residents of the city passed a millage to cover sidewalk repairs. On the basis of this funding, the city crafted a five-year plan to repair its sidewalks. Under the plan, which encompassed 2012 through 2016, 20 percent of the city's sidewalks were to be inspected and repaired in a given year until 100 percent of the sidewalks were addressed by the end of the five years. With respect to prioritization of areas in the city under the plan, although the timing of pre-2012 repairs was a factor taken into consideration, there was no initial assessment of need or condition in determining what areas would first be served. For example, the 20 percent of city sidewalks covered in year one, 2012, did not come first because of any particular determination that said area had the most deteriorated sidewalks compared to other areas. There was testimony that the city lacked adequate resources to do an initial city-wide inspection to identify areas most in need of sidewalk repairs. The city does have a program called A2 Fix It, which is an application for mobile devices that allows residents to notify city officials about infrastructure problems such as potholes and sidewalk defects. Under the five-year plan, the area of plaintiff's trip and fall was not scheduled for inspection and repair until 2015; the fall occurred in September 2014.

There is no dispute that there is typically heavy pedestrian traffic where the incident occurred, which was in the vicinity of the Jolly Pumpkin restaurant. In her deposition, plaintiff, a college librarian who was walking with a friend at the time of the fall, gave the following description of what transpired:

> We were walking down the sidewalk. It was very, very crowded. And I tripped and fell flat on my face. My foot curved in. There was nothing supporting it.

Plaintiff testified that it was clear and sunny when she tripped on the hole in the sidewalk outside the restaurant. Later that day, her friend took four photographs of the hole, one of which showed plaintiff standing on the spot of the fall with one sandaled foot in the hole. Plaintiff explained that an employee of the restaurant helped her up and went to get the restaurant's manager. A restaurant employee provided plaintiff with a bag of ice and a damp cloth, and eventually the manager, a male, came outside and spoke to plaintiff. Plaintiff testified that she did not know the manager's name. She further indicated that the manager informed her that the hole was the city's and not the restaurant's responsibility and that the restaurant had contacted the city several

times in the past about the hole but nothing was ever done. The manager did not execute an affidavit or testify in a deposition during the lower court proceedings.[1]

As revealed in e-mails between city personnel, the manager of the restaurant called the city within a day or two of the accident and complained about the sidewalk hole. The e-mails further indicated that the hole was patched by September 9, 2014.[2] As part of discovery, the city subpoenaed the restaurant requesting any e-mails between the city and the restaurant covering the period from August 1 to October 1, 2014. The restaurant responded that none could be identified or located.

A project engineer who oversaw the city sidewalk program testified that he could not say how long the hole had existed prior to plaintiff's fall. He acknowledged that the photographs of the hole taken by plaintiff's friend revealed that the hole had previously been patched, but he could not ascertain when that took place. The project engineer stated that he certainly would have noticed the hole had he inspected the area. He testified that the depth of the hole could not be discerned from simply looking at the photographs. He conceded that he would have no basis to disagree if plaintiff's expert opined that the sidewalk, given the hole, was not in reasonable repair. A city sidewalk inspector testified that on his review of the photographs, he believed that the hole was wider and longer than two inches and that, as to the hole's depth, it was "close to 2 inches," either a little below or above. He could not tell how long the hole had been in existence. The inspector testified that the photographs revealed that a prior concrete repair had been made to the area of the hole, but he could not put a timeframe on when that repair was made. He also stated that asphalt was used to patch the hole after the accident as a temporary repair. The inspector agreed that the hole was a tripping hazard.

---

[1] At the hearing on the city's motion for summary disposition, plaintiff's counsel indicated that, through the efforts of a private investigator, counsel had identified and spoke with an employee of the Jolly Pumpkin who was prepared to testify that the hole had indeed existed for several months prior to plaintiff's fall. It is not clear whether this employee was the manager alluded to by plaintiff in her deposition. The trial court did not appear to take into consideration the claims by plaintiff's counsel regarding this employee when ruling to deny the summary disposition motion. After the trial court denied the city's motion for summary disposition, plaintiff filed a motion to amend her witness list in order to add the above-referenced Jolly Pumpkin employee as a witness, along with yet another employee. The lower court record contains no ruling on the motion, presumably because the city had filed the instant appeal. Given the procedural posture of the case, we cannot take into consideration the purported claims of the Jolly Pumpkin employee for purposes of analyzing the appellate issues. We would note, however, that had we concluded that the city had raised valid arguments associated with the 30-day statutory provision, we nonetheless would have contemplated a remand for a ruling by the trial court on whether it would be proper, at this late stage of the litigation, to consider the employee's claims in relation to the city's entitlement to summary disposition, assuming sufficient proof of the employee's claims.

[2] Again, the accident occurred on September 7, 2014.

This case turns on the report, testimony, and opinions of plaintiff's expert. He is a long-time civil engineer who has done an equal amount of work on behalf of plaintiffs and defendants over the years. In a preliminary report prepared by plaintiff's expert, he offered the following opinions that were based on his review of five deposition transcripts and the four photographs:

1. The defect appears to be several months old. There is no debris from the original permanent patch present. The hole appears to be partially filled with dirt and pebbles that would have accumulated over time. The edges of the hole appear to be slightly eroded and rounded off. Finally, the adjacent concrete appears to contain hairline cracks. Water can easily infiltrate into this type of crack and, when frozen, the water expands and causes spalling of the concrete. I understand the accident happened on September 7, 2014. The most recent freezing weather would have been in March or perhaps April several months prior.

2. Ample time was available between the spalling and the incident to have detected and repaired the hole.

3. Although I understand the hole has since been repaired and is no longer available for inspection and measurement, it does appear from the photos that at least one edge is two inches deep and the bottom of the hole is uneven.

4. I also understand that the hole had at one time been repaired with "cold patch." If my understanding of "cold patch" is the same as the City's, this is a totally inappropriate method of patching a concrete sidewalk. It would be okay for a temporary fix in road pavement but not a concrete walk.

5. Finally, I find it hard to understand how a five year repair program could be addressed by inspecting only 20% of the sidewalks at a time. It would seem that a serious defect in some other area would be overlooked in favor of a minor defect in the area being inspected. In my opinion, a more reasonable approach would have been to find all the defects in the entire City inventory of concrete walks, prioritize them and then attack the most serious in year 1, the second most serious in year 2, etc.

Subsequently, plaintiff's expert testified in a deposition. There were certain steps that the expert conceded he had not undertaken in forming his opinions. These included not taking any measurements or conducting any testing at the accident scene, not going to, surveying, or photographing the sidewalk in person, not interviewing employees or owners of surrounding businesses, not examining plaintiff's sandals to help in gauging the depth of the hole, not assessing pedestrian traffic and travel patterns at the site, and not contemplating whether the hole

was caused by erosion.[3]  When asked why he formed the opinion that the hole had existed for several months prior to the accident, he testified as follows:

> Well, because from Exhibit No. 4 [photograph], I can see some . . . other patch material that was in there or perhaps it's some of the original concrete, but it's got a hairline crack in it, and those hairline cracks are particularly susceptible to water infiltration. Water expands when it freezes, and it would have caused spa[l]ling[4] of the concrete. I've seen this type of damage on other concrete surfaces. And I thought, well, when was the last time we had freezing weather in Ann Arbor? March, April maybe. . . . .

Plaintiff's expert additionally explained that water can infiltrate sidewalk cracks, that cold weather can then freeze the water in the cracks and cause expansion, and that the expansion can cause the surrounding concrete to pop and come out in chunks or pieces.  He noted that the photographs showed cracked pieces of concrete around the hole that were still in place but ready to come or pop out, as had occurred where the hole existed.  Plaintiff's expert further testified that the photographs reflected that the edges of the hole were slightly rounded off, appearing to have been scuffed by people walking back and forth, thereby causing the rounding, which "would have taken a period of time . . . to happen."

Plaintiff's expert acknowledged that the hole conceivably could have been created by something heavy dropping on the sidewalk, but he opined to a reasonable degree of scientific certainty that the hole had existed for several months before plaintiff fell and was formed by the expansion of frozen water in the cracks and spalling, as part of the freeze-thaw cycle.  He admitted that he did not have personal knowledge of water infiltrating the cracks.  The expert additionally testified as follows upon questioning by the city's attorney:

> *Q.*  [I]n terms of basing your opinion that this was caused by water infiltrating cracks, that is . . . speculation, is it not?
>
> *A.*  I don't know if I would call it speculation. Based on my experience with cracks and concrete, this is what happens.

---

[3] The expert testified that he asked plaintiff's counsel whether he should travel to the scene of the accident in order to examine the sidewalk, and counsel responded that there was nothing to see because the city had repaired the hole.  The expert indicated that had he gone to the scene, and assuming that he could have removed patch material or taken a core of it from the former hole and done so without destroying the parent material lying underneath, he may have been "able to get a better idea of the thickness" of the patch.

[4] The expert was later asked to define "spalling," and he responded:

> Concrete breaks off as opposed to being chipped away with a hammer and a chisel. Spa[l]ling is because there's maybe a hairline crack where water could have gotten in or perhaps some sort of foreign material in there that the concrete didn't adhere to, and it would pop off. That's what I mean by spa[l]ling.

He acknowledged that he did not know for sure whether the most recent freeze preceding the September 2014 accident was in March or April of 2014, or some other month that spring or winter.

With respect to the presence of dirt, pebbles, and other debris in the hole, plaintiff's expert agreed that it was possible that the debris had blown into the hole within a short time period and that the debris did not necessarily take several months to accumulate in the hole.[5] In regard to the expert's opinion, found in the preliminary report, that it appeared from the photographs that at least one edge of the hole was two inches deep, he testified that this conclusion was based in part on plaintiff's sandaled foot, along with his previous experience in assessing the depth of defects in association with the so-called two-inch rule. He did concede that a layperson could likely make the same assessment.[6] Plaintiff's expert testified that the length and width of the hole was more than two inches. The following colloquy then took place between the expert and the city's attorney:

> *Q.* And would you consider the length and the width of the defect to be a dangerous condition in the sidewalk itself of a particular character other than solely a vertical discontinuity?
>
> *A.* Yes. The volume of that hole is important.

Finally, the expert testified that the cold patch repair of the hole after the fall with "asphalt tar" was not a proper permanent fix for the hole because the material would not adhere to the surrounding concrete and thus be susceptible to being displaced by pedestrians walking on it.

## C. PROCEDURAL HISTORY

In November 2016, following the close of discovery, the city filed a motion for summary disposition under MCR 2.116(C)(7) and (10), attaching documentary evidence in support of the motion. The city maintained that plaintiff could not successfully invoke the "sidewalk exception" to governmental immunity pursuant to the requirements of MCL 691.1402a, because the city did not have actual or constructive knowledge of the alleged defect, because plaintiff had no admissible evidence that the alleged defect was in existence in excess of the requisite 30-day period prior to the fall, and because plaintiff could not meet her burden of establishing the existence of an actual defect, as necessary to overcome the statutory presumption that the sidewalk was in reasonable repair. The primary premise of the city's motion for summary disposition was that the opinions of plaintiff's expert were purely speculative and not admissible under MRE 702. Plaintiff responded and contested the city's claims, submitting documentary

---

[5] At a different stage of the expert's deposition, he observed, "I don't know how long it's [debris] been there, but that would have taken some time to accumulate."

[6] Earlier in his deposition, the expert stated that it did not take an advanced degree or experience to determine the depth of a hole.

evidence in support of her position and relying heavily on the opinions of her expert, which plaintiff argued were admissible under MRE 702 and were not speculative.

At the hearing on the city's motion for summary disposition, the trial court, ruling from the bench, denied the motion. The trial court determined that plaintiff had "offered expert testimony based on legitimate and scientific reasons that the sidewalk defect outside the Jolly Pumpkin restaurant was several months old[,]" and that there was "ample time between spalling of the concrete and accident to repair it." The court also observed that plaintiff's expert, and possibly one of the city's own employees, indicated that the hole constituted a two-inch vertical discontinuity. Finally, the trial court, relying on MCL 691.1403, found that plaintiff had shown that the hole had existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before plaintiff was injured, thereby entitling plaintiff to a conclusive presumption that the city had knowledge of the hole and time to repair it.

## II. ANALYSIS

### A. STANDARDS OF REVIEW AND MCR 2.116(C)(7)

In *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012), this Court, addressing the standard of review in a case entailing a claim of governmental immunity, explained:

> This Court reviews de novo a trial court's decision on a motion for summary disposition. The applicability of governmental immunity and the statutory exceptions to immunity are also reviewed de novo on appeal. MCR 2.116(C)(7) provides for summary disposition when a claim is barred because of immunity granted by law. The moving party may submit affidavits, depositions, admissions, or other documentary evidence in support of the motion if substantively admissible. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. We must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7). If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. But when a relevant factual dispute does exist, summary disposition is not appropriate. [Citations, quotation marks, and ellipses omitted.]

In the context of examining whether a trial court properly deemed documentary evidence to be admissible or inadmissible for purposes of rendering a ruling on a motion for summary disposition, our review is for an abuse of discretion, although questions of law underlying the evidentiary ruling are reviewed de novo. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016).

### B. GOVERNMENTAL IMMUNITY

The *Moraccini* panel set forth the basic analytical framework with respect to actions against governmental entities, observing as follows:

Except as otherwise provided, the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, broadly shields and grants to governmental agencies immunity from tort liability when an agency is engaged in the exercise or discharge of a governmental function. The existence and scope of governmental immunity was solely a creation of the courts until the Legislature enacted the GTLA in 1964, which codified several exceptions to governmental immunity that permit a plaintiff to pursue a claim against a governmental agency. A governmental agency can be held liable under the GTLA only if a case falls into one of the enumerated statutory exceptions. An activity that is expressly or impliedly authorized or mandated by constitution, statute, local charter, ordinance, or other law constitutes a governmental function. This Court gives the term "governmental function" a broad interpretation, but the statutory exceptions must be narrowly construed. A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity. [Citations and quotation marks omitted.]

## C. THE SIDEWALK EXCEPTION TO GOVERNMENTAL IMMUNITY

At the time of the alleged trip and fall, MCL 691.1402a, which pertains to municipal sidewalks, provided:

(1) A municipal corporation in which a sidewalk is installed adjacent to a municipal, county, or state highway shall maintain the sidewalk in reasonable repair.

(2) A municipal corporation is not liable for breach of a duty to maintain a sidewalk unless the plaintiff proves that at least 30 days before the occurrence of the relevant injury, death, or damage, the municipal corporation knew or, in the exercise of reasonable diligence, should have known of the existence of the defect in the sidewalk.

(3) In a civil action, a municipal corporation that has a duty to maintain a sidewalk under subsection (1) is presumed to have maintained the sidewalk in reasonable repair. This presumption may only be rebutted by evidence of facts showing that a proximate cause of the injury was 1 or both of the following:

(a) A vertical discontinuity defect of 2 inches or more in the sidewalk.

(b) A dangerous condition in the sidewalk itself of a particular character other than solely a vertical discontinuity.

(4) Whether a presumption under subsection (3) has been rebutted is a question of law for the court.

(5) A municipal corporation's liability under subsection (1) is limited by section 81131 of the natural resources and environmental protection act, 1994 PA 451, MCL 324.81131. [See 2012 PA 50, effective March 13, 2012.[7]]

With respect to the 30-day knowledge provision in MCL 691.1402a(2), our Supreme Court in *Bernardoni v City of Saginaw*, 499 Mich 470, 474; 886 NW2d 109 (2016), tied it to MCL 691.1403, which provides:

No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. *Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place.* [Emphasis added.]

"[T]o invoke the highway exception as it pertains to sidewalks, a plaintiff must show that the defect existed at least 30 days before the accident." *Bernardoni*, 499 Mich at 474. "Generally, the question of whether a street defect, otherwise actionable against the municipality, has existed a sufficient length of time and under such circumstances that the municipality is deemed to have notice is a question of fact, and not a question of law." *Id.* (quotation marks omitted). In *Bernardoni*, the Supreme Court held:

[F]or purposes of the highway exception, plaintiff's photographs of a sidewalk defect taken about 30 days after an accident alone do not create a genuine issue of material fact as to whether the sidewalk defect existed at least 30 days before the accident. Without more, a jury has no basis for concluding that the defect was present for the requisite period of time. Because plaintiff has provided photographs of the defect only as it existed about 30 days after her fall and has not explained why these photographs indicate the state of the sidewalk 60 days earlier, she cannot withstand summary disposition. [*Id.* at 476.]

Our Supreme Court further explained:

The necessary inference that would connect the photographs to the sidewalk's condition 60 days earlier becomes tenable only with additional evidence. Absent such evidence, one can imagine any number of scenarios in which the defect formed *within* 60 days of when the photographs were taken. Yet plaintiff has offered no evidentiary support of any kind for her assumptions that

---

[7] Pursuant to 2016 PA 419, which was made effective January 4, 2017, the Legislature added a provision that a municipal corporation can raise "any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious." MCL 691.1402a(5). The city does not argue that the amendatory language is applicable to this case.

the defect existed for the necessary amount of time. For example, she has offered no affidavits from neighbors who viewed the sidewalk 30 days before the accident, *nor did she introduce expert testimony demonstrating that the sidewalk discontinuity was of a type that usually forms or enlarges over a long period of time.* Such additional evidence might have narrowed or closed the inferential gap between the photographs and the conclusions plaintiff and the Court of Appeals drew from them. Instead, plaintiff's attempt to prove the sidewalk's past condition simply by proving its current condition fails, as more is needed to explain why the current condition is probative of the past condition. [*Id.* at 475-476.]

## D. DISCUSSION AND RESOLUTION

On appeal, the city first argues that there was no admissible evidence that the city had actual or constructive notice that the alleged defect – the hole – had been in existence for 30 or more days prior to the accident. Closely tied to this argument is the city's additional contention that there was no admissible evidence that the hole had even actually been in existence for the requisite 30-day period. The underlying premise of these arguments is twofold. First, the city maintains that plaintiff's deposition testimony about the Jolly Pumpkin manager informing her that the restaurant had previously complained to the city about the hole without a response was inadmissible hearsay. Second, the city argues that the opinions of plaintiff's expert were impermissibly speculative and not admissible under MRE 702. We disagree with the latter argument, but agree with respect to the former proposition.

In order for documentary evidence to be considered in ruling on a motion for summary disposition, the evidence must be admissible in content, although it need not be in admissible form, e.g., an affidavit. *Maiden v Rozwood*, 461 Mich 109, 124 n 6; 597 NW2d 817 (1999). Plaintiff could not testify at trial that the Jolly Pumpkin's manager claimed that the restaurant had previously complained to the city about the hole, with the complaints falling on deaf ears. Such testimony would clearly constitute inadmissible hearsay, as plaintiff would be offering the statement to prove the truth of the matter asserted, MRE 801(c), and no applicable hearsay exception is readily apparent, MRE 803. Again, there is no affidavit or deposition testimony from the manager himself. However, there is no indication in the record that the trial court, in making its ruling, placed any weight or reliance whatsoever on plaintiff's testimony regarding the manager's comments. Accordingly, there is no basis for reversal on this issue. Absent consideration of the testimony by plaintiff concerning the manager's remarks, plaintiff's case either fails or goes forward depending on the admissibility of the opinions by plaintiff's expert, as there is no other evidence that would support application of the sidewalk exception under MCL 691.1402a.

With respect to plaintiff's expert, MRE 702 governs the admissibility of expert testimony, providing:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the

product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Elher*, 499 Mich at 22-23, our Supreme Court discussed the nature of MRE 702, stating:

> This rule requires the circuit court to ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable. MRE 702 incorporates the standards of reliability that the United States Supreme Court articulated in *Daubert v Merrell Dow Pharm, Inc*[, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993),] in order to interpret the equivalent federal rule of evidence. Under *Daubert,* the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. A lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony. Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible. [Citations and quotation marks omitted.]

Although the exercise of the gatekeeper role under MRE 702 falls within a trial court's discretion, a court may neither abandon the obligation nor perform the function inadequately. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004).

We conclude that the city's arguments challenging the admissibility of the opinions espoused by plaintiff's expert go to the weight and credibility of the opinions, not to their admissibility. See *Surman v Surman*, 277 Mich App 287, 309-310; 745 NW2d 802 (2007) (a trial court's doubts regarding credibility, or the opposing party's disagreement with an expert's interpretation of facts or opinion, present issues concerning the testimony's weight, not its admissibility); see also *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 101; 776 NW2d 114 (2009) (citing *Surman* and indicating that the "defendant is confusing the admissibility of the testimony with the weight to be attributed to the expert's opinion"). Initially, we note that the city does not dispute the general science that the freeze-thaw cycle in conjunction with water infiltration of concrete cracks can cause the concrete to break apart or spall.[8] Rather, the city contends that plaintiff's expert is engaging in pure speculation by opining that this was the physical mechanism by which the hole in front of the Jolly Pumpkin was actually created, given that other possibilities existed, e.g., something heavy being dropped on the sidewalk. The city maintains that the expert's opinions were not based on sufficient facts, nor did the expert apply the accepted scientific principles reliably to the facts in this case. We disagree.

As pointed out by plaintiff's expert,[9] the photographs of the hole show *existing hairline cracks* in the sidewalk around and leading to the hole, which would have allowed water

---

[8] Indeed, as Michiganders, we are all too familiar with this process.

[9] The city does not contest the expert's qualifications to generally give opinions in this case.

infiltration, freezing, and expansion consistent with the expert's theory. And, as also noted by the expert, there are surrounding pieces of cracked concrete that appear ready to come or pop out. Moreover, while the expert could not pinpoint exactly when the last freeze had occurred, it was certainly many months prior to the accident on September 7, 2014. Further, plaintiff's expert indicated that the photographs reflected that the edges of the hole were slightly rounded off, appearing to have been scuffed by people walking back and forth, thereby causing the rounding, which "would have taken a period of time . . . to happen." The city does not challenge this view. Disregarding the matter concerning the debris in the hole, there were still sufficient facts to support the expert's opinion with regard to how the hole was created, such that his opinion is admissible, and the evidence does not support the city's claim, for purposes of admissibility, that the expert applied the principles associated with freeze-thaw cycles and spalling unreliably to the facts of this case. Again, the hairline cracks in the sidewalk are very telling. With respect to the steps not taken by plaintiff's expert in the process of forming his opinions, as spelled out earlier, these failures speak to credibility and weight relative to the opinions, which are to be assessed by the trier of fact. In sum, the trial court did not err by taking into consideration the opinions expressed by plaintiff's expert and by finding that the opinions provided support for the proposition that the hole had been in existence for at least 30 days prior to the accident.

With respect to the city's knowledge of the hole, because we cannot consider the claims by plaintiff's counsel that a Jolly Pumpkin employee is prepared to testify that the city knew about the hole beforehand, nor can we consider plaintiff's testimony about the manager's remarks regarding the city's knowledge, there is no evidence that the city had *actual* knowledge of the hole 30 days before plaintiff tripped and fell. However, under MCL 691.1403, as applied to MCL 691.1402a, *Bernardoni*, 499 Mich at 474, we agree with the trial court that the city's constructive knowledge must be conclusively presumed, where the hole "existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place." The hole is sufficiently substantial that it would have been readily apparent to an ordinarily observant person for the 30-day period. The city's project engineer acknowledged that he certainly would have noticed the hole had he inspected the area and that he would have no basis to disagree with plaintiff's expert's opinion that the sidewalk was not in reasonable repair in light of the hole. And the city sidewalk inspector agreed that the hole posed a tripping hazard. Given the evidence, the trial court did not err in applying the conclusive presumption of knowledge.

Finally, in regard to the presumption in MCL 691.1402a(3) that the city maintained the sidewalk in reasonable repair, which can be rebutted with evidence of a vertical discontinuity defect of two or more inches, with the question of whether the presumption has been rebutted being one of law for the court to decide, we hold that the trial court did not err in ruling that the presumption was rebutted under the two-inch rule. While we cannot discern from the photographs the depth of the hole, the trial court was presented with the expert's opinion that one edge of the hole was two inches deep, the testimony of the city sidewalk inspector that the hole was close to two inches in depth, perhaps more, and testimony that the depth could not be ascertained. There was no documentary evidence that the hole was definitively not two inches

deep. In light of the evidence, we cannot conclude that the trial court erred in finding that plaintiff had rebutted the presumption of reasonable repair.[10]

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.


/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[10] Although we believe that the alternative manner to rebut the presumption may be applicable, i.e., through evidence showing that the hole constituted a dangerous condition, regardless of its depth, MCL 691.1402a(3)(b), the trial court did not reach that particular issue, so it is not appropriate for us to rule on the question.