# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

ELHER v MISRA

Docket No. 150824. Decided February 8, 2016.

Paulette Elher brought a medical malpractice action in the Oakland Circuit Court against Dwijen Misra, Jr., and others, seeking damages after Misra accidentally clipped her common bile duct while performing a laparoscopic cholecystectomy. Plaintiff sought to admit expert testimony stating that clipping a patient's common bile duct during an otherwise uncomplicated laparoscopic cholecystectomy was a breach of the applicable standard of care. Plaintiff also claimed that negligence could be inferred from the improperly clipped bile duct under the doctrine of res ipsa loquitur. Defendants moved to exclude plaintiff's proposed expert testimony on the ground that, because it was not supported by peer-reviewed literature or the opinions of other physicians, it did not meet the standards for reliability set forth in MRE 702 and MCL 600.2955. The court, Colleen A. O'Brien, J., excluded the expert testimony, ruled that the doctrine of res ipsa loquitur was inapplicable, and granted defendants' motion for summary disposition. Plaintiff appealed. The Court of Appeals, BECKERING, P.J., and GLEICHER, J. (HOEKSTRA, J., concurring in part and dissenting in part), affirmed in part, reversed in part, and remanded the case for further proceedings. 308 Mich App 276 (2014). The Court of Appeals majority held that the trial court had abused its discretion by incorrectly applying MRE 702 to exclude the testimony of plaintiff's expert witness because the factors that the trial court considered were not relevant to the expert's testimony, which did not involve an unsound scientific methodology or questionable data. Rather, the majority concluded, whether injuring the common bile duct violated the applicable standard of care called for a value judgment derived from training and experience. The majority agreed, however, with the trial court that the doctrine of res ipsa loquitur did not apply to plaintiff's claim. The dissent agreed with the majority's analysis of the res ipsa loquitor issue, but concluded that the trial court did not abuse its discretion by excluding the testimony of plaintiff's expert regarding the standard of care because no basis had been offered for the testimony apart from the expert's own personal views. Defendants sought leave to appeal in the Michigan Supreme Court.

In an opinion per curiam signed by Chief Justice YOUNG and Justices MARKMAN, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court, in lieu of granting leave to appeal and without hearing oral argument, *held*:

The proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955, and MCL 600.2169. MCL 600.2169 relates to the expert's license and qualifications. MRE 702 requires that the trial court

ensure that each aspect of a proposed expert witness's testimony, including the underlying data and methodology, is reliable. MCL 600.2955 requires the trial court to determine whether the expert's opinion is reliable and will assist the trier of fact by examining the opinion and its basis, including the facts, technique, methodology, and reasoning relied on by the expert. In this case, plaintiff's expert was qualified to testify as an expert given his extensive experience. The question was whether his opinion, that absent scarring or inflammation it is virtually always a breach of the standard of care to clip the common bile duct during a laparoscopic cholecystectomy, was sufficiently reliable under the principles articulated in MRE 702 and MCL 600.2955. It is within a trial court's discretion to decide how to determine reliability in a given case, and all the enumerated factors for determining reliability listed in MCL 600.2955 may not be relevant in every case. The trial court in this case did not abuse its discretion by relying on two of the statutory factors: (1) whether the opinion and its basis had been subjected to peer-reviewed publication and (2) the degree to which the opinion and its basis were generally accepted within the relevant expert community. First, contrary to the Court of Appeals majority's opinion, defendants presented evidence that there was peer-reviewed medical literature suggesting that most bile duct injuries occur because of misperception and that such misperception errors do not constitute negligence. Therefore, the issue had been studied in peer-reviewed literature, but plaintiff failed to submit any peer-reviewed medical literature supporting her expert's opinion. Second, although some evidence was presented indicating that some physicians agreed with plaintiff's expert, there was no evidence regarding the degree to which his opinion was generally accepted in the relevant expert community. On the other hand, the trial court abused its discretion by relying on the fact that the opinion of plaintiff's expert had not been subjected to scientific testing or replication because that statutory factor was not relevant to the type of opinion at issue. But that error did not render the trial court's ultimate ruling under MCL 600.2955 an abuse of discretion given that plaintiff relied solely on her expert's background and experience, factors that are generally insufficient, standing alone, to support a finding of reliability. The trial court also did not abuse its discretion by concluding that the proposed testimony of plaintiff's expert was deficient because it did not meet the requirements of MRE 702. The opinion of plaintiff's expert was not based on reliable principles or methods, his opinion was contradicted by the opinion of defendant's expert and published literature on the subject that was admitted into evidence, and there was no literature supporting the testimony of plaintiff's expert admitted into evidence. While peer-reviewed, published literature is not always necessary or sufficient to meet the requirements of MRE 702, the lack of supporting literature, combined with the lack of any other form of support, rendered the opinion of plaintiff's expert unreliable and inadmissible under MRE 702. The trial court did not abuse its discretion by concluding that the experience and background of plaintiff's expert were not sufficient to deem his opinion reliable under MRE 702 and MCL 600.2955 given the absence of other evidence supporting his opinion.

Judgment of the Court of Appeals reversed; trial court order excluding the testimony of plaintiff's expert and granting summary disposition in favor of defendants reinstated.

Justice BERNSTEIN, dissenting, would have affirmed for the reasons stated in the Court of Appeals majority opinion.

Justice LARSEN took no part in the decision of this case.

©2016 State of Michigan

# OPINION

Chief Justice:            Justices:
Robert P. Young, Jr.      Stephen J. Markman
                          Brian K. Zahra
                          Bridget M. McCormack
                          David F. Viviano
                          Richard H. Bernstein
                          Joan L. Larsen

FILED February 8, 2016

STATE OF MICHIGAN

SUPREME COURT

PAULETTE ELHER,

       Plaintiff-Appellee,

v

No. 150824

DWIJEN MISRA, JR., M.D., MURPHY &
MISRA, M.D., PC, and WILLIAM
BEAUMONT HOSPITAL,

       Defendants-Appellants,

and

PREFERRED MEDICAL GROUP and
PREFERRED FAMILY MEDICINE,

       Defendants.

BEFORE THE ENTIRE BENCH (except LARSEN, J.)

PER CURIAM.

In this medical malpractice case, we must determine whether the circuit court abused its discretion by excluding plaintiff's expert medical testimony under MRE 702. The circuit court granted summary disposition in favor of defendants after excluding the opinion testimony of plaintiff's expert, Dr. Paul Priebe, concluding that it was inadmissible under MRE 702 because it was not reliable and did not meet the requirements of MCL 600.2955. The Court of Appeals, in a split opinion, reversed the circuit court and remanded, concluding that the circuit court incorrectly applied MRE 702 and abused its discretion by excluding Priebe's testimony. The Court of Appeals dissent concluded that the circuit court did not abuse its discretion.

We hold that, under the facts of this case, in which Priebe admitted that his opinion was based on his own personal beliefs, there was no evidence that his opinion was generally accepted within the relevant expert community, there was no peer-reviewed medical literature supporting his opinion, plaintiff failed to provide any other support for Priebe's opinion, and defendant submitted contradictory, peer-reviewed medical literature, the circuit court did not abuse its discretion by excluding Priebe's testimony. The Court of Appeals clearly erred by concluding otherwise. We therefore reverse the judgment of the Court of Appeals and reinstate the opinion and order of the Oakland Circuit Court.

## I. FACTS AND PROCEEDINGS

Plaintiff, Paulette Elher, underwent a laparoscopic cholecystectomy (removal of the gallbladder) performed by defendant Dr. Dwijen Misra, Jr., on August 18, 2008. Before the surgery, Misra discussed the risks and benefits of the surgery with plaintiff,

and plaintiff signed a consent form that specifically mentioned a risk of injury to the common bile duct. It is undisputed that, during the surgery, Misra inadvertently clipped the common bile duct leading from plaintiff's liver,[1] resulting in plaintiff having to undergo emergency surgery to remove the clip and repair the duct so that bile could again drain from her liver. According to Misra, "[t]he view from the laparoscope is not optimal and not recognized as optimal and illusions can be created in which the [common bile duct] could be clipped." Misra estimated that this complication occurs in 0.5 to 2% of all laparoscopic gallbladder surgeries.

On February 3, 2011, plaintiff filed suit in Oakland Circuit Court, alleging that Misra breached the applicable standard of care by clipping the common bile duct.[2] Plaintiff's sole standard-of-care expert was Priebe, a board certified general surgeon and professor at Case Western Reserve University. At his deposition, Priebe testified that, in his opinion, it is virtually always malpractice to injure the common bile duct during a laparoscopic cholecystectomy, absent extensive inflammation or scarring. He considered plaintiff's injury in this case to be a breach of the standard of care, but did not provide any supporting authority for his opinion.

---

[1] During this procedure, medical clips are placed and remain on the cystic artery and cystic duct to ensure against, respectively, postoperative blood loss and bile leakage. Misra admitted that "when [he] clipped the common [bile] duct, [he] thought [he was] clipping the cystic duct."

[2] Plaintiff also claimed that the doctrine of res ipsa loquitur applied and Misra's professional corporation and Beaumont Hospital were vicariously liable under the theory of respondeat superior. Those claims are not before us.

*Q*. So this [case] falls within your own self-definition of what the standard of care and breach would be in such a case; is that correct?

*A*. Correct.

*Q*. You cannot cite to any medical literature whatsoever that supports that opinion, true?

*A*. Medical literature doesn't discuss standard of care.

*Q*. So is that true, sir?

*A*. It's true. But medical literature does not discuss standard of care.

*Q*. Well, you know, there are a host of colleagues of yours, national and local, who would disagree with you in terms of the only caveats being a breach of the standard of care being extensive scarring or inflammation; isn't that correct?

*A*. They're entitled to their opinion. In my opinion, that is a breach of the standard of care and malpractice.

\* \* \*

*Q*. Can you cite one current general surgery colleague at Case Western University who agrees with your position, to your knowledge, that other than these caveats of extensive scarring or inflammation, it is always a breach of the standard of care to cause injury to the common bile duct during a laparoscopic cholecystectomy?

*A*. I've never discussed this with any of them. I have no idea what their opinions are.

\* \* \*

*Q*. And as it relates to [your standard-of-care] opinion, you cannot cite to a shred of medical literature, a medical authority, to support that opinion other than your own belief system, true?

*A*. There is no authority that exists to do that, so that's true. But there is no authority that does that. So the answer is true.

\* \* \*

*Q*. Do you know whether . . . any of you other colleagues in the Case Western system agree with that position?

4

*A*. I've never discussed it with them.  I wouldn't know.

*Q*. Can you cite to one colleague in the general surgery field, a board certified general surgeon, who agrees with your position that the only caveats to injury to the common bile duct with laparoscopic cholecystectomy would be extensive scarring or inflammation?

*A*. I wouldn't know.  I've never asked any of my other surgical colleagues, so I would have no idea what their opinion is.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing, among other things, that Priebe failed to meet the requirements of MRE 702 and MCL 600.2955 because his opinion was unreliable.  Plaintiff responded that expert testimony was not required because Misra's negligence would be obvious even to a layperson and that Priebe's opinion was, nonetheless, reliable under the factors listed in MCL 600.2955 given Priebe's experience and qualifications.  Defendants replied by filing affidavits from several experts and at least one peer-reviewed publication supporting their opinions that clipping the common bile duct is a known potential complication of laparoscopic cholecystectomy because of the lack of depth perception on the two-dimensional video monitor used to view the area while performing the surgery.

The circuit court concluded that plaintiff had failed to address whether her expert's testimony was reliable under MRE 702 or met any of the requirements of MCL 600.2955. According to the court, plaintiff merely pointed to Priebe's experience and background to argue that his opinion was reliable and, therefore, admissible, but plaintiff's expert was required to present more than his own opinions, credentials, and the number of procedures he had performed.  The circuit court concluded that there was no evidence that Priebe's opinion and its basis were subjected to scientific testing and replication, no evidence that Priebe's opinion and its basis were the subject of peer-reviewed

5

publication, and no evidence regarding the degree to which his opinion and its basis were generally accepted in the relevant expert community. The court noted that Priebe admitted that there was no authority supporting his opinion regarding the standard of care, that he was not aware of anyone who agreed with his opinion, and that he could not cite any medical literature supporting his beliefs, although he claimed that medical literature discussing the standard of care did not exist. Given this evidence, the circuit court concluded that the testimony of plaintiff's expert regarding the standard of care was unreliable and inadmissible and granted summary disposition in favor of defendants on plaintiff's malpractice claim.

Plaintiff appealed the circuit court's decision in the Court of Appeals, which reversed the circuit court in a split opinion.[3] The majority held that the circuit court incorrectly applied MRE 702 and abused its discretion by concluding that Priebe's testimony was inadmissible. The majority characterized this case as "a difference of opinion among highly qualified experts" and concluded that the experts disagreed on "an issue outside the realm of scientific methodology." Therefore, neither MRE 702 nor MCL 600.2955 stood in the way of Priebe's testimony. The majority rejected as irrelevant the three guideposts relied on by the circuit court—the absence of scientific testing and replication, the lack of evidence that Priebe's opinion and its basis were subjected to peer-reviewed publication, and plaintiff's failure to demonstrate the degree to which Priebe's opinion and its basis were generally accepted in the relevant expert community.

---

[3] *Elher v Misra*, 308 Mich App 276; 870 NW2d 335 (2014).

6

First, the majority concluded that no evidence of testing or replication supported either side's expert opinions. The majority failed to understand how such standard-of-care opinion could ever be tested or replicated. Because Priebe's opinion did not implicate any possible testing or replication, the majority concluded that the circuit court abused its discretion by using this factor to exclude his testimony.

Second, with regard to peer-reviewed publication, the majority stated that Priebe testified that there was no peer-reviewed literature addressing whether clipping the common bile duct qualified as a breach of the standard of care and concluded that defendants' article submissions did not rebut Priebe's statement. The majority concluded that the article authored by Dr. Josef E. Fischer and submitted by defendants was an editorial expressing an opinion that supported rather than refuted Priebe's thesis that common bile duct injuries can represent standard-of-care violations. The article authored by Dr. Lawrence Way and submitted by defendants similarly acknowledged that some bile duct injuries are the product of negligence, said the majority. The majority concluded that the circuit court abused its discretion by relying on the lack of peer-review to exclude Priebe's testimony because no evidence supported that the standard-of-care issue debated by the experts had been tested, analyzed, investigated, or studied in peer-reviewed articles.

Finally, the majority concluded that no widespread acceptance of a standard-of-care statement could be found. The majority reasoned that the record reflected no disagreement about the standard of care, only regarding what circumstances give rise to a breach of that standard. The majority noted that the Fischer and Way articles verified that "purists" in the surgical world agreed with Priebe. There was no evidence presented

7

that addressed whether Priebe's view had general acceptance, the majority admitted, but the majority concluded that was not surprising because the question was not an empirical one. Thus, the majority determined that the general-acceptance guidepost was not relevant and that the record supported Priebe's assessment that no authority and no literature defined what constitutes a breach of the standard of care.

The Court of Appeals dissent would have affirmed the grant of summary disposition, concluding that the circuit court did not abuse its discretion by excluding the expert testimony of Priebe. The dissent stated that Priebe provided no basis for his understanding regarding what the standard of care required or the manner in which it was breached. Priebe conceded that his views were based on his own "belief system," for which he failed to provide any supporting authority. Quoting Priebe's testimony, the dissent concluded that Priebe offered no basis for his asserted knowledge of the standard of care or his opinion that there was a breach in this case. The dissent stated that it may be that Priebe held himself to a higher, or different, standard than that practiced by the medical community at large and that Priebe's experience alone, without any supporting literature, was insufficient to allow him to testify that Misra committed malpractice. In a footnote, the dissent pointed out that while the majority characterized Priebe's opinion as consistent with the "purists" referred to in the Fischer and Way articles, there is no indication that these articles, or the thinking of other "purists," informed Priebe's opinion.

8

## II. STANDARD OF REVIEW

We review the circuit court's decision to exclude evidence for an abuse of discretion.[4] "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes."[5] We review de novo questions of law underlying evidentiary rulings, including the interpretation of statutes and court rules.[6] The admission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion.[7]

## III. ANALYSIS

Defendants contend that the circuit court did not abuse its discretion by excluding Priebe's testimony. We agree.

A plaintiff in a medical malpractice action must establish "(1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury."[8] "Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard."[9] An exception

---

[4] *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

[5] *Id.*, citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

[6] *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013); *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012).

[7] *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004).

[8] *Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994).

[9] *Sullivan v Russell*, 417 Mich 398, 407; 338 NW2d 181 (1983).

exists when the professional's breach of the standard of care is so obvious that it is within the common knowledge and experience of an ordinary layperson.[10] The proponent of the evidence has the burden of establishing its relevance and admissibility.[11]

"The proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169."[12] MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule requires the circuit court to ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable.[13] MRE 702 incorporates the standards of reliability that the United States Supreme Court articulated in *Daubert v Merrell Dow Pharm, Inc*,[14] in order to interpret the equivalent federal rule

---

[10] *Id.* (citations and quotation marks omitted).

[11] *Edry*, 486 Mich at 639 (citation and quotation marks omitted).

[12] *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067 (2007). MCL 600.2169 relates to the expert's license and qualifications and is not in dispute in this case.

[13] *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 779; 685 NW2d 391 (2004).

[14] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

of evidence.[15] "Under *Daubert*, 'the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' "[16] A lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony.[17] "Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible."[18]

MCL 600.2955(1) requires the court to determine whether the expert's opinion is reliable and will assist the trier of fact by examining the opinion and its basis, including the facts, technique, methodology, and reasoning relied on by the expert, and by considering seven factors:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this

---

[15] *Edry*, 486 Mich at 639-640.

[16] *Id*., quoting *Daubert*, 509 US at 589.

[17] *Edry*, 486 Mich at 640.

[18] *Id*. at 642.

subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

At the outset, we reject plaintiff's contention that this a case in which the breach of the standard of care is so obvious to a layperson that no expert testimony is required. Priebe himself conceded that some professionals believe that clipping the common bile duct, absent extensive scarring or inflammation, is not necessarily a breach of the standard of care. Accordingly, expert testimony was required to prove the applicable standard of care and a breach of that standard of care in this case.[19]

There is no doubt that Priebe, plaintiff's sole expert regarding the standard of care, was qualified to testify as an expert based on his extensive experience. On the basis of this experience, he opined that, absent extensive scarring or inflammation, it is virtually always a breach of the standard of care to clip the common bile duct. In Priebe's opinion, because there was no evidence of scarring of inflammation, Misra breached the standard of care in this case. The question is whether this opinion was sufficiently reliable under the principles articulated in MRE 702 and by the Legislature in MCL 600.2955.

The Court of Appeals viewed this case as one in which the experts' opinions were outside the realm of scientific methodology and in which Priebe's opinion was reliable

---

[19] *Sullivan*, 417 Mich at 407.

given his specialized experience and knowledge. The United States Supreme Court has recognized, as did the circuit court, that the *Daubert* factors may or may not be relevant in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of the expert's testimony.[20] And even though the United States Supreme Court has stated that, in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience,"[21] the Court has also stated that even in those cases, the *Daubert* factors can be helpful,[22] even if all of the factors may not necessarily apply in determining the reliability of scientific testimony.[23] Accordingly, it bears repeating that it is within a trial court's discretion how to determine reliability.[24]

We conclude that the circuit court did not abuse it discretion by relying on two of the factors listed in MCL 600.2955 and by concluding that Priebe's opinion was not reliable. First, the Court of Appeals erred by concluding that the issue debated by the experts was not studied in peer-reviewed articles and, therefore, that the circuit court abused its discretion when it relied on this factor. The majority conceded that the article authored by Way was peer-reviewed. Way concluded, after analyzing 252 operations, that 97% of injuries occur because of misperception and that such misperception errors

---

[20] *Kumho Tire Co v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999).

[21] *Id*.

[22] *Id*. at 151.

[23] *Id*.

[24] *Id*. at 152.

13

do not constitute negligence. Thus, the issue being debated has been studied. Plaintiff, however, failed to submit any peer-reviewed medical literature in support of Priebe's opinion, and Priebe admitted that he knew of none.

The circuit court also did not abuse its discretion by relying on the lack of evidence regarding the degree to which Priebe's opinion was generally accepted.[25] The Court of Appeals majority misinterpreted this factor. The majority concluded that there was no widespread acceptance of any standard-of-care statement. But this factor requires the court to consider "[t]he *degree* to which the opinion and its basis are generally accepted within the relevant expert community."[26] Priebe admitted that he knew of no one that shared his opinion. While the articles submitted by defendants may have suggested that "purists" in the field agreed with Priebe, there was still no indication regarding the degree of acceptance of his opinion. The majority conceded that there was no evidence regarding whether Priebe's view had general acceptance within the relevant expert community. This was a relevant factor for the circuit court to consider.[27]

We do, however, agree with the Court of Appeals majority that all the factors in MCL 600.2955 may not be relevant in every case. Indeed, we agree with the majority that the scientific testing and replication factor does not fit the type of opinion at issue in

---

[25] See MCL 600.2955(1)(e).

[26] MCL 600.2955(1)(e) (emphasis added).

[27] Defendants claim that Priebe's opinion is novel and, therefore, inadmissible because plaintiff failed to establish that it has achieved "general scientific acceptance" under MCL 600.2955(2). However, MCL 600.2955(2) refers to a novel *methodology or form of scientific evidence*, not opinion; therefore, this provision is inapplicable.

this case. Therefore, the circuit court abused its discretion by relying on this factor. But this does not render the circuit court's ultimate decision an abuse of discretion. Plaintiff merely pointed to Priebe's background and experience in regard to the remaining factors, which is generally not sufficient to argue that an expert's opinion is reliable. Priebe admitted that his opinion was based on his own beliefs, there was no medical literature supporting his opinion, and plaintiff failed to provide any other support for Priebe's opinion.

The circuit court also did not abuse its discretion by concluding that Priebe's testimony was deficient because it did not conform to MRE 702. We find this Court's decision in *Edry v Adelman* to be instructive. In *Edry*, this Court concluded that an expert failed to meet the requirements of MRE 702 because his opinion "was not based on reliable principles or methods;" his opinion was contradicted by the opinion of the defendant's expert and published literature on the subject that was admitted into evidence, which even he acknowledged as authoritative; and there was no literature supporting the testimony of plaintiff's expert admitted into evidence.[28] As in *Edry*, Priebe's opinion "was not based on reliable principles or methods," his opinion was contradicted by the opinion of defendant's expert and published literature on the subject that was admitted into evidence, and there was no literature supporting the testimony of plaintiff's expert admitted into evidence.[29] Plaintiff failed to provide any support for

---

[28] *Edry*, 486 Mich at 640.

[29] *Id*.

15

Priebe's opinion that would demonstrate that it had some basis in fact and that it was the result of reliable principles or methods. While peer-reviewed, published literature is not always necessary or sufficient to meet the requirements of MRE 702, the lack of supporting literature, combined with the lack of any other form of support, rendered Priebe's opinion unreliable and inadmissible under MRE 702.

## IV. CONCLUSION

We hold that the circuit court did not abuse its discretion by concluding that Priebe's background and experience were not sufficient to render his opinion reliable in this case when Priebe admitted that his opinion was based on his own beliefs, there was no evidence that his opinion was generally accepted within the relevant expert community, there was no peer-reviewed medical literature supporting his opinion, plaintiff failed to provide any other support for Priebe's opinion, and defendants submitted contradictory peer-reviewed literature. As noted by the Court of Appeals dissent, the concern in relying on Priebe's personal opinion is that Priebe may have held himself to a higher, or different, standard than that practiced by the medical community at large.[30] This is particularly true where, as here, there is contradictory medical literature.

---

[30] We disagree with plaintiff's characterization of this case as one in which the standard of care is undisputed.

16

For the reasons stated, in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and reinstate the May 13, 2013 opinion and order of the Oakland Circuit Court which excluded Priebe's testimony and granted summary disposition in favor of defendants.

> Robert P. Young, Jr.
> Stephen J. Markman
> Brian K. Zahra
> Bridget M. McCormack
> David F. Viviano

LARSEN, J., took no part in the decision of this case.

STATE OF MICHIGAN

SUPREME COURT


PAULETTE ELHER,

      Plaintiff-Appellee,

v                                                                          No. 150824

DWIJEN MISRA, JR., M.D., MURPHY &
MISRA, M.D., PC, and WILLIAM
BEAUMONT HOSPITAL,

      Defendants-Appellants,

and

PREFERRED MEDICAL GROUP and
PREFERRED FAMILY MEDICINE,

      Defendants.

_____

BERNSTEIN, J. (*dissenting*).


     I would affirm for the reasons stated in the Court of Appeals majority opinion.  I

believe the Court of Appeals reached the right result for the right reasons.


                                          Richard H. Bernstein