*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RITA WALSH and GARY WALSH,

　　　　Plaintiffs-Appellees,

v

MARC SAKWA, M.D. and WILLIAM
BEAUMONT HOSPITAL,

　　　　Defendants-Appellants,

and

JEFFREY ALTSHULER, M.D. and
SOUTHEASTERN MICHIGAN
CARDIOVASCULAR SURGEONS PLLC,

　　　　Defendants.

UNPUBLISHED
September 1, 2022

No. 356517
Oakland Circuit Court
LC No. 2016-155529-NH

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

BORRELLO, J. (*dissenting*).

I disagree with the views expressed by my colleagues in the majority that plaintiffs'
standard-of-care expert witness, Dr. Louis Samuels, M.D., testified to a standard of care that
amounted to strict liability and that the proposed expert testimony was unreliable as a matter of
law. I therefore respectfully dissent.

In a medical malpractice action, the plaintiff generally must present expert testimony "to
establish the applicable standard of care and to demonstrate that the professional breached that
standard." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (quotation marks and citation
omitted). "The proponent of the evidence has the burden of establishing its relevance and
admissibility." *Id*. at 22.

At issue in this appeal, is whether Samuels' testimony is reliable under MRE 702 and MCL
600.2955. As our Supreme Court has explained regarding MRE 702,

-1-

[t]his rule requires the circuit court to ensure that each aspect of an expert witness's testimony, including the underlying data and methodology, is reliable. MRE 702 incorporates the standards of reliability that the United States Supreme Court articulated in *Daubert v Merrell Dow Pharm, Inc*, [509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)] in order to interpret the equivalent federal rule of evidence. "Under *Daubert*, 'the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' " A lack of supporting literature, while not dispositive, is an important factor in determining the admissibility of expert witness testimony. "Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." [*Elher*, 499 Mich at 22-23 (some citations omitted).]

Further, MCL 600.2955(1) also concerns assessing the reliability of the expert's opinion. See *Elher*, 499 Mich at 23 ("MCL 600.2955(1) requires the court to determine whether the expert's opinion is reliable and will assist the trier of fact by examining the opinion and its basis, including the facts, technique, methodology, and reasoning relied on by the expert, and by considering seven factors[.]"). Our Supreme Court stated in *Elher* that "it is within a trial court's discretion how to determine reliability." *Elher*, 499 Mich at 25. In doing so, the Court observed:

The United States Supreme Court has recognized . . . that the *Daubert* factors may or may not be relevant in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of the expert's testimony. And even though the United States Supreme Court has stated that, in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," the Court has also stated that even in those cases, the *Daubert* factors can be helpful, even if all of the factors may not necessarily apply in determining the reliability of scientific testimony. [*Elher*, 499 Mich at 24-25 (citations omitted).]

Here, Samuels, a board-certified cardiothoracic surgeon who had experience in performing the surgical procedure at issue in this case, testified at the *Daubert* hearing that if the procedure is performed correctly within the standard of care, there is no reason for the surgeon's needle to ever enter the right atrium where it could potentially ensnare the Swan-Ganz catheter. Samuels explained that it is a basic principle of surgery that a surgeon needs to always know where a needle, knife, or other instrument is going within the patient's body. Samuels also testified that the location of the incision in the left atrium, which the surgeon knows will have to be stitched closed at the end of the procedure, must be chosen by the surgeon to avoid the possibility of "blindly" putting a needle or stitch some place, especially since the surgeon knows that the Swan-Ganz catheter is present in the right atrium and cannot be seen visually. There is no dispute that the inside of the right atrium where the Swan-Ganz catheter is located cannot be seen by the surgeon during the procedure. In light of these considerations, Samuels opined that it was a breach of the standard of care for a surgeon to allow the needle to enter the right atrium and ensnare the Swan-Ganz catheter under the circumstances that existed in this case.

Additionally, the articles in the record and cited by Samuels make clear that inadvertently suturing the Swan-Ganz catheter during invasive mitral-valve-repair surgery is a potential problem to be avoided by remaining aware of its presence and location during the operation, and by

exercising due caution in placing sutures. These articles thus support the basis for Samuels' conclusion. One article, which lists Mehmet Kaplan, M.D. as the first author (the Kaplan article), concluded that "the surgeon should not leave the Swan-Ganz catheter in the suture while closing the right or left atriotomy or during venous cannulation." The Kaplan article discussed the complications that arise, including the necessity of "reoperation," when a Swan-Ganz catheter is sutured to the heart. The authors advised "while completing the atrial sutures, the route of the Swan-Ganz catheter in the atrium should be taken into account and the surgeon should be careful not to leave it in the sutures," after which the catheter should be moved to ensure that it was not caught in the sutures. Another article, which listed Eduard J. Vucins, M.D., as the first author, discussed the risk of inadvertently entrapping the Swan-Ganz catheter with a suture during cardiac surgery, potentially serious complications that could result, and steps taken to decrease the possibility of catheter entrapment so as to avoid the potential for those complications.

Defendants argue that Samuels' opinion testimony was unreliable because he could not cite literature or other qualified experts who had already expressly stated the same conclusion, using identical syntax, that Samuels had reached regarding the standard of care in this case. However, defendants have lost sight of the fact that the relevant inquiry by the trial court in fulfilling its duty to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," *Daubert*, 509 US at 597, is "a flexible one" that focuses "solely on principles and methodology, not on the conclusions that they generate," *id*. at 594-595. The "overarching subject" of this inquiry is "the scientific validity and thus the evidentiary relevance and reliability—of the *principles* that underlie a proposed submission." *Id*. (emphasis added). Defendants' improper focus on Samuels' conclusion rather than his principles and methodology is insufficient to demonstrate that the trial court abused its discretion. *Id*. The majority's analysis suffers from the same deficiency.

Moreover, our Supreme Court has recognized that "it is within a trial court's discretion how to determine reliability"; that the relevancy of the *Daubert* factors in assessing reliability may be affected by "the nature of the issue, the expert's expertise, and the subject of the expert's testimony"; and that "in some cases, the relevant reliability concerns may focus upon personal knowledge or experience." *Elher*, 499 Mich at 24-25 (quotation marks and citation omitted). The instant case is one of those cases where perhaps the most relevant reliability concern is Samuels' experience as a surgeon in performing the mitral-valve repair operation and the application of general principles of surgery to avoid blindly inserting a needle into an area of the body that cannot be seen while being aware of the undisputed importance of avoiding entrapping the catheter residing in that unseen portion of the heart. Furthermore, unlike the expert witness who was excluded from testifying in *Elher*, Samuels cited literature and other colleagues' opinions that supported his opinions. See *Elher*, 499 Mich at 14. The trial court fully explained the basis for its ruling in this case, including the factors it found relevant and the factors that were not applicable. In summation, the trial court did not err in its findings of fact or law.

For these reasons I would affirm the trial court.

/s/ Stephen L. Borrello