*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RITA WALSH and GARY WALSH,

Plaintiffs-Appellees,

v

MARC SAKWA, M.D., and WILLIAM
BEAUMONT HOSPITAL,

Defendants-Appellants,

and

SOUTHEASTERN MICHIGAN
CARDIOVASCULAR SURGEONS PLLC,

Defendant.

UNPUBLISHED
July 08, 2025
12:14 PM

No. 356517
Oakland Circuit Court
LC No. 2016-155529-NH

ON REMAND

Before: GADOLA, C.J., and BORRELLO and M. J. KELLY, JJ.

BORRELLO, J. (*dissenting*).

I maintain my colleagues' majority opinion that Dr. Louis Samuels, M.D.'s expert testimony is inherently unreliable and consequently inadmissible is erroneous. Furthermore, I contest their assertion that our Supreme Court's ruling in *Danhoff v Fahim, M.D.*, 513 Mich 427; 15 NW3d 262 (2024), does not necessitate a reevaluation of my colleagues' prior conclusions on remand. Accordingly, I again respectfully dissent, and reiterate my prior conclusions regarding this matter.

As I stated in my prior dissent:

> Here, Samuels, a board-certified cardiothoracic surgeon who had experience in performing the surgical procedure at issue in this case, testified at the

-1-

*Daubert* hearing that if the procedure is performed correctly within the standard of care, there is no reason for the surgeon's needle to ever enter the right atrium where it could potentially ensnare the Swan-Ganz catheter. Samuels explained that it is a basic principle of surgery that a surgeon needs to always know where a needle, knife, or other instrument is going within the patient's body. Samuels also testified that the location of the incision in the left atrium, which the surgeon knows will have to be stitched closed at the end of the procedure, must be chosen by the surgeon to avoid the possibility of "blindly" putting a needle or stitch some place, especially since the surgeon knows that the Swan-Ganz catheter is present in the right atrium and cannot be seen visually. There is no dispute that the inside of the right atrium where the Swan-Ganz catheter is located cannot be seen by the surgeon during the procedure. In light of these considerations, Samuels opined that it was a breach of the standard of care for a surgeon to allow the needle to enter the right atrium and ensnare the Swan-Ganz catheter under the circumstances that existed in this case.

Additionally, the articles in the record and cited by Samuels make clear that inadvertently suturing the Swan-Ganz catheter during [minimally] invasive mitral-valve-repair surgery is a potential problem to be avoided by remaining aware of its presence and location during the operation, and by exercising due caution in placing sutures. These articles thus support the basis for Samuels' conclusion. One article, which lists Mehmet Kaplan, M.D. as the first author (the Kaplan article), concluded that "the surgeon should not leave the Swan-Ganz catheter in the suture while closing the right or left atriotomy or during venous cannulation." The Kaplan article discussed the complications that arise, including the necessity of "reoperation," when a Swan-Ganz catheter is sutured to the heart. The authors advised "while completing the atrial sutures, the route of the Swan-Ganz catheter in the atrium should be taken into account and the surgeon should be careful not to leave it in the sutures," after which the catheter should be moved to ensure that it was not caught in the sutures. Another article, which listed Eduard J. Vucins, M.D., as the first author, discussed the risk of inadvertently entrapping the Swan-Ganz catheter with a suture during cardiac surgery, potentially serious complications that could result, and steps taken to decrease the possibility of catheter entrapment so as to avoid the potential for those complications.

Defendants argue that Samuels' opinion testimony was unreliable because he could not cite literature or other qualified experts who had already expressly stated the same conclusion, using identical syntax, that Samuels had reached regarding the standard of care in this case. However, defendants have lost sight of the fact that the relevant inquiry by the trial court in fulfilling its duty to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," [*Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 597; 113 S Ct 2786; 125 L Ed 2d 469 (1993)], is "a flexible one" that focuses "solely on principles and methodology, not on the conclusions that they generate," *id*. at 594-595. The "overarching subject" of this inquiry is "the scientific validity and thus the evidentiary relevance and reliability—of the *principles* that underlie a proposed submission." *Id*. (emphasis added). Defendants' improper focus on Samuels'

conclusion rather than his principles and methodology is insufficient to demonstrate that the trial court abused its discretion. *Id.* The majority's analysis suffers from the same deficiency.

> Moreover, our Supreme Court has recognized that "it is within a trial court's discretion how to determine reliability"; that the relevancy of the *Daubert* factors in assessing reliability may be affected by "the nature of the issue, the expert's expertise, and the subject of the expert's testimony"; and that "in some cases, the relevant reliability concerns may focus upon personal knowledge or experience." [*Elher v Misra*, 499 Mich 11, 24-25; 878 NW2d 790 (2016)] (quotation marks and citation omitted). The instant case is one of those cases where perhaps the most relevant reliability concern is Samuels' experience as a surgeon in performing the mitral-valve repair operation and the application of general principles of surgery to avoid blindly inserting a needle into an area of the body that cannot be seen while being aware of the undisputed importance of avoiding entrapping the catheter residing in that unseen portion of the heart. Furthermore, unlike the expert witness who was excluded from testifying in *Elher*, Samuels cited literature and other colleagues' opinions that supported his opinions. See *Elher*, 499 Mich at 14. The trial court fully explained the basis for its ruling in this case, including the factors it found relevant and the factors that were not applicable. In summation, the trial court did not err in its findings of fact or law. [*Walsh v Sakwa*, unpublished per curiam opinion of the Court of Appeals, issued September 1, 2022 (Docket No. 356517) (BORRELLO, J., dissenting), pp 2-3.]

I continue to subscribe to the above analysis, especially in light of our Supreme Court's analysis in *Danhoff*. In *Danhoff*, our Supreme Court clearly explained that a trial court's inquiry when performing its gatekeeping function in this context is "flexible based on the circumstances of each case but may include a determination that the expert's theory or the techniques used to generate that theory—*but not the expert's conclusions*—can be tested, has been subjected to peer review and publication, has a known or potential error rate, or is generally accepted among the scientific community." *Danhoff*, 513 Mich at 444 (emphasis added). In that case, "Dr. Koebbe opined that because a bowel perforation like plaintiff experienced is so rare and so likely to have been caused by a medical instrument in an area it should not have been that it constitutes a breach of the standard of care," and our Supreme Court stated, "This key fact makes a difference." *Id*. at 451.

Dr. Samuels presented testimony asserting that adherence to fundamental surgical principles, combined with a thorough understanding of relevant anatomical considerations, would render it unnecessary for the surgeon's needle to penetrate the right atrium, where the Swan-Ganz catheter was located. If believed, the ensnarement of the catheter could only be attributed to negligent practices on the part of defendant. Contrary to the conclusions reached by my colleagues, I conclude that Dr. Samuels' expert opinion drew upon both his clinical experience and pertinent medical literature, which were included in the record.

In further contrast to the arguments posited by my colleagues in the majority, Dr. Samuels articulated specific procedural adjustments that could have been implemented to prevent the entrapment of the Swan-Ganz catheter within the sutures. He underscored the imperative for

surgeons to maintain a clear awareness of the needle's trajectory within the patient's anatomy and to judiciously select the incision site to mitigate the risk of entangling the unseen Swan-Ganz catheter. Dr. Samuels thereby delineated a clear standard of care that was applicable in this case and illustrated how it was breached under the circumstances. Hence, I remain in support of affirming the trial court's ruling.

/s/ Stephen L. Borrello