*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAD ROBERTS,

      Plaintiff-Appellant,

v

BRONSON HEALTHCARE and JOHN
QUERTERMUS, MD,

      Defendants-Appellees.

UNPUBLISHED
October 13, 2025
11:03 AM

No. 374357
Kalamazoo Circuit Court
LC No. 2017-000545-NH

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Plaintiff, Tad Roberts, appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) to defendants, Bronson Healthcare and John Quertermus, M.D., of plaintiff's medical malpractice claim. We affirm.

## I. FACTS

This case was previously before this Court as an interlocutory appeal. In that appeal, plaintiff challenged the trial court's order granting defendants' motion in limine, which precluded plaintiff's gastroenterology expert from testifying regarding what a reasonable surgeon would have done if confronted with plaintiff's clinical circumstances. In that appeal, this Court summarized the facts of the case as follows:

> This appeal stems from plaintiff's assertion that Dr. Quertermus, a gastroenterologist physician, failed to diagnose an obstruction in plaintiff's sigmoid colon and failed to refer him to a surgeon for treatment. According to plaintiff, in 2015 and 2016, he experienced gastrointestinal symptoms, such as abdominal pain, vomiting, and diarrhea, for which he sought treatment from his primary care physician, several hospital emergency departments, and Dr. Quertermus. Dr. Quertermus worked in defendant Bronson Healthcare's Office of Gastroenterology and Colorectal Surgery.

-1-

The course of events for which plaintiff asserts Dr. Quertermus was medically negligent began on December 28, 2015, when plaintiff presented himself to Bronson Methodist Hospital's Emergency Department with complaints of abdominal pain, constipation, nausea, vomiting, and blood in his vomit and stool. An x-ray taken that day showed results consistent with "multiple dilated large bowel and a small loop of dilated small bowel." Plaintiff also underwent a CT scan, which showed "thickening" in the sigmoid colon "suggesting at least a mild degree of large bowel obstruction over the long-term with slowed stool transit." Plaintiff was placed on ciprofloxacin and Flagyl and referred to a gastroenterologist.

On January 28, 2016, plaintiff followed up with his primary care physician, complaining of recurring abdominal pain and unexplained weight loss. A CT scan performed on February 11, 2016, showed "[m]oderate thickening and enhancement of [the] mid sigmoid colon with adjacent fat stranding," which was suggestive of inflammatory bowel disease, such as Crohn's disease. The findings also listed "[p]ossible stricture in the mid sigmoid colon and ileal bowel loops."

On February 22, 2016, Dr. Quertermus saw plaintiff for rectal bleeding and an abnormal colon. Dr. Quertermus performed an esophagogastroduodenoscopy (EGD) test. During the EGD, Dr. Quertermus advanced a scope 50 centimeters into plaintiff's colon and observed that the "mucosa was edematous but was not friable" and noted the presence of "no ulcerations or erosions." After the EGD, Dr. Quertermus advised plaintiff to take omeprazole and a laxative and to follow up in four weeks. Plaintiff visited his primary care physician again on March 14, 2016, for abdominal pain, weight loss, vomiting, and diarrhea.

On May 2, 2016, plaintiff presented to the Borgess Emergency Department with complaints of continuing abdominal pain and vomiting. A CT scan performed that day showed "[w]orsening mural thickening and adjacent fat stranding of [the] mid sigmoid, worrisome for obstructive lesion." The next day, plaintiff underwent a sigmoidectomy and colostomy surgical procedure. During the surgery, a mass was found in the sigmoid colon and a portion of the sigmoid was removed. After the surgery, plaintiff continued treatment with his primary care physician but refused to revisit Dr. Quertermus because plaintiff believed that Dr. Quertermus failed to diagnose the sigmoid obstruction. Plaintiff underwent a reverse colostomy on February 1, 2017, and an additional surgery on February 9, 2017, after he developed a postoperative wound infection and popped staples from the closure of the incision site.

Plaintiff filed this medical malpractice action on December 1, 2017. His theory of liability was that Dr. Quertermus failed to render care as a reasonable and prudent gastroenterologist physician when, in light of plaintiff's clinical presentation and the results from the CT scans and EGD test, he failed to diagnose plaintiff with a sigmoid obstruction and failed to refer him to a surgeon. Plaintiff asserted that had Dr. Quertermus referred plaintiff to a surgeon in February 2016, a reasonable and prudent surgeon would have performed surgery shortly thereafter,

avoiding unnecessary pain, a colostomy, its reversal, and complications ensuing from those procedures.

In support of his complaint, plaintiff offered Dr. Michael Duffy, a gastroenterologist physician, to opine as an expert that a reasonable and prudent gastroenterologist of average training, experience, and education under the same or similar clinical circumstances would have diagnosed plaintiff and referred him to a surgeon earlier. During his deposition, Dr. Duffy acknowledged that he is not a surgeon, but opined that given his experience treating patients and referring them to surgeons over many years, a reasonable and prudent surgeon would have performed surgery on plaintiff shortly after the referral.

Defendants moved in limine under MCL 600.2169 and MRE 702 to exclude Dr. Duffy from opining what a surgeon would have done had Dr. Quertermus referred plaintiff in February 2016 on the basis that Dr. Duffy was not a surgeon and was unqualified to testify regarding the standard of care applicable to a surgeon. Plaintiff responded that Dr. Duffy is a respected gastroenterologist with over 40 years' experience, which includes experience on what happens to patients once he refers them to a surgeon. At a hearing, the trial court concluded that Dr. Duffy was qualified to testify about the conduct of a gastroenterologist, but unqualified to testify what a surgeon would have done under MCL 600.2169. Plaintiff moved for reconsideration. The trial court denied the motion because it presented the same issues already addressed by the trial court. This appeal followed. [*Roberts v Bronson Healthcare*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2024 (Docket No. 366761), p 1-2, lv den 15 NW3d 619 (2025) (footnotes omitted).]

This Court affirmed the decision of the trial court, reasoning that the record demonstrated that plaintiff had not shown Dr. Duffy to be minimally qualified to opine regarding what a surgeon would have done if plaintiff earlier had been referred to a surgeon under the circumstances. See *id*. at 5-6. Upon resumption of the case in the trial court, defendants moved for summary disposition under MCR 2.116(C)(10), contending that because Dr. Duffy was disqualified from testifying regarding what a surgeon would have done under the circumstances, plaintiff had failed to present the requisite expert testimony on the element of causation, and therefore defendants were entitled to judgment. The trial court agreed, and granted defendant's motion. Plaintiff now appeals, challenging the trial court's order.

## II. DISCUSSION

Plaintiff contends that the trial court erred by granting defendants' motion for summary disposition. Plaintiff argues that the trial court incorrectly determined that plaintiff's expert, Dr. Duffy, was not qualified to render an opinion regarding what a surgeon would have done if plaintiff's case had been referred to him or her in February 2016, and that plaintiff therefore failed to present expert testimony on the element of causation. We disagree that the trial court erred.

## A. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny summary disposition. *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is warranted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing a motion for summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists if the record leaves open an issue upon which reasonable minds might disagree. *Id*.

B. LAW OF THE CASE

Under the doctrine of law of the case, when an appellate court "has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000) (citations omitted). Our Supreme Court in *Lopatin* further explained that "as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*.

The doctrine of law of the case is "a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). The doctrine is based on the need for finality of judgments and also the appellate court's lack of jurisdiction to modify its own previous opinions except on rehearing. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 406-407; 952 NW2d 586 (2020). The doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Rott*, 508 Mich at 287, quoting *Lopatin*, 462 Mich at 260.

When this case was before this Court previously, plaintiff contended that the trial court had abused its discretion by prohibiting Dr. Duffy from testifying that a reasonable surgeon would have performed surgery on plaintiff sooner if Dr. Quertermus had made a referral in February 2016. Plaintiff argued that Dr. Duffy was qualified by his experience and his education to testify that a surgeon would have performed the surgery in 2016 if confronted with plaintiff's medical circumstances. This Court disagreed, reasoning, in relevant part:

> We disagree because the record demonstrates that Dr. Duffy lacked the requisite qualifications under MCL 600.2169(2) to opine regarding a surgeon's decision to perform surgery.
>
> To prevail in a medical malpractice action, a plaintiff must establish four elements:
>
> > (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

-4-

\* \* \*

"[A] plaintiff's prima facie case of medical malpractice must draw a causal connection between the defendant's breach of the applicable standard of care and the plaintiff's injuries." *Craig*, 471 Mich at 90. Expert testimony is essential to establish that causal link. *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). The proponent of expert testimony in a medical malpractice action bears the burden of proving that his or her expert's testimony is relevant and admissible. *Elher v Misra*, 499 Mich 11, 22; 878 NW2d 790 (2016).

In this case, plaintiff's theory is that Dr. Quertermus breached the standard of care applicable to a gastroenterologist by failing to diagnose plaintiff with a sigmoid obstruction and failing to refer plaintiff to a surgeon in February 2016. Plaintiff posits that, had Dr. Quertermus referred him to a surgeon in February 2016, plaintiff would have had surgery earlier and avoided additional pain, the colostomy, and the additional surgeries to reverse the colostomy and treat complications arising from the reversal.

A central premise of plaintiff's theory of causation is that had a reasonable surgeon been informed of plaintiff's condition in February 2016, the surgeon would have performed the surgery earlier. Accordingly, this is a "failure to refer" case premised on the consequences of delayed surgery. Plaintiff's theory of "but for" causation requires evidence regarding what a reasonable surgeon would have done had Dr. Quertermus made a referral in February 2016. See *Skinner* [*v Square D Co*], 445 Mich [153,] 163[; 516 NW2d 475 (1994)]. Given this chain of causation, plaintiff needed to offer expert testimony opining the necessity of performing surgery earlier than May 2016. Plaintiff potentially could have established this evidence through the testimony of the surgeon who performed his eventual surgery or an uninvolved qualified expert.

Plaintiff offered Dr. Duffy as his sole medical expert. Dr. Duffy is a board-certified internal medicine and gastroenterologist physician. He shares the same specialty as Dr. Quertermus. The trial court concluded that Dr. Duffy was qualified to opine regarding Dr. Quertermus's conduct as a gastroenterologist; however, the trial court prohibited Dr. Duffy from opining what a surgeon would have done had Dr. Quertermus made a surgical referral.

Plaintiff argues that the trial court abused its discretion because Dr. Duffy's testimony did not address the standard of care applicable to a surgeon and instead constituted only causation testimony. Although framed as a link in plaintiff's theory of causation, Dr. Duffy's testimony necessarily encompassed the standard of care applicable to a surgeon. Dr. Duffy sought to explain how a reasonable and prudent surgeon would have responded to receiving a referral from Dr. Quertermus. See *Locke v Pachtman*, 446 Mich 216, 225; 521 NW2d 786 (1994) ("Standard of care" testimony applicable to a surgeon encompasses "what a reasonably prudent surgeon would do, in keeping with the standards of professional practice" in that case).

Expert testimony in a medical malpractice action is subject to MCL 600.2169. When a party to the action is a specialist providing "standard of practice or care" testimony, MCL 600.2169(1)(a) requires that the expert have "the same specialty as the party against whom or on whose behalf the testimony is offered." Although expert testimony regarding surgery is required in this case, no surgeon is a party to this action. Accordingly, MCL 600.2169(1) is inapplicable to the testimony at issue.

Even though MCL 600.2169(1) is inapplicable, all expert testimony in a medical malpractice action is still subject to the requirements in MCL 600.2169(2), which provides:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.
>
> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
>
> (d) The relevancy of the expert witness's testimony.

Unlike Subsection 2169(1), Subsection 2169(2) is not limited to "standard of practice or care" testimony. Rather, the subsection applies to any expert testifying about any issue that requires expert testimony in a medical malpractice action. *Halloran v Bhan*, 470 Mich 572, 578 n 6; 683 NW2d 129 (2004) ("MCL 600.2169(2), however, deals with any expert witness, while MCL 600.2169(1) deals only with expert witnesses regarding the standard of care. Expert testimony may encompass many subjects that do not involve the standard of care, such as causation.").

Plaintiff generally argues that Dr. Duffy was qualified to testify about the necessity of earlier surgery because of his training, experience, and interactions with surgeons over 40 years. However, nothing in Dr. Duffy's affidavit or otherwise in the record suggests that he has experience or training in surgery. In fact, Dr. Duffy himself repeatedly acknowledged that he is not a surgeon and has no surgical training. Dr. Duffy also indicated the decision to perform an elective gastroenterological surgery requires consideration of various factors unrelated to the field of gastroenterology.

Dr. Duffy's lack of qualifications to opine on this subject was demonstrated by the inconsistent testimony he offered during his deposition. When asked if he could testify regarding the standard of care applicable to a surgeon, Dr. Duffy stated "I really can't render a standard of care opinion for a surgeon" and "I could not really comment on what a surgeon should do or what the standard of care would require

him to do in that circumstance." Later in the deposition Dr. Duffy changed his answer to state: "Realizing that I am not a surgeon, but I deal with these problems, I do refer patients to surgeons with this type of issue. I can't say that a surgeon would necessarily have operated on him, but I would think that a reasonable surgeon probably would have." Additionally, when asked if plaintiff would have undergone surgery if he had been referred to a surgeon, Dr. Duffy initially answered, "It's speculation." After follow-up questions, he answered affirmatively that plaintiff would have undergone surgery earlier.

Moreover, Dr. Duffy demonstrated a lack of knowledge regarding the details of a surgeon's decision-making process. When asked about the risks of abdominal surgery or sigmoid obstruction surgery, Dr. Duffy answered that he would "defer to a surgeon for that." Further, Dr. Duffy could not provide an answer when asked what percentage of patients with chronic sigmoid obstruction require surgery. The internal inconsistencies in his testimony and inability to answer questions about the decision to perform surgery demonstrate that Dr. Duffy did not have the requisite knowledge to opine what a reasonable surgeon would have done in this case.

The motion granted by the trial court, which is at issue in this appeal, is not a motion for summary disposition nor is it an appeal of an order which completely barred Dr. Duffy from testifying. Rather, our review is limited to review of the trial court's decision to exclude the testimony of Dr. Duffy regarding what a reasonable surgeon would have done in this case. Plaintiff bore the burden of establishing Dr. Duffy's qualifications on the subject and failed to do so. See *Elher*, 499 Mich at 22. The trial court did not abuse its discretion when it concluded that Dr. Duffy could not opine what a reasonable and prudent surgeon would have done in plaintiff's clinical circumstances. [*Roberts*, unpub op at 3-6 (footnote omitted).]

This Court's previous decision specifically resolved that Dr. Duffy was not qualified as an expert witness to testify regarding what a surgeon would have done if plaintiff had been referred to a surgeon in February 2016. The law of the case doctrine precluded the trial court from thereafter deciding that issue differently in the context of a motion for summary disposition. See *Rott*, 508 Mich at 286, citing *Lopatin*, 462 Mich at 259-260. On appeal, plaintiff argues once again that Dr. Duffy is qualified to testify that a surgeon would have performed the surgery in February 2016 if confronted with plaintiff's medical circumstances. The doctrine of law of the case, however, similarly precludes this Court from deciding that issue differently than this Court did in the prior appeal. See *Rott*, 508 Mich at 286.

Plaintiff suggested before the trial court that a motion for summary disposition requires a different analysis of Dr. Duffy's testimony than the analysis undertaken for a motion in limine.[1]

---

[1] Plaintiff also argues that an expert witness for causation need not have the same specialty as the party, as required for a standard of care witness under MCL 600.2169(1). This Court specifically addressed that question during the interlocutory appeal, explaining that although MCL

But regardless of the context of the testimony, plaintiff's argument was disposed of by this Court in the interlocutory appeal, namely, that Dr. Duffy's experience did not qualify him to opine regarding what a surgeon would have done upon referral of plaintiff's case in February 2016. Before the trial court, defendant moved for summary disposition under MCR 2.116(C)(10) on the basis that Dr. Duffy's causation testimony had been stricken, and as a result, plaintiff failed to present expert opinion evidence on the element of causation. Before the trial court, plaintiff responded in part:

> [T]he Court of Appeals in terms of this case and how it dealt with [it], affirmed the fact that the surgeon was not required because this is not – the issue is not whether standard of care required the surgery. The issue is whether or not there is a qualified expert to say more probably than not under this clinical circumstance, surgery would have been performed.
>
> And in the context of not requiring a surgeon, I cannot really think of a more qualified expert than Dr. Duffy who is exactly the kind of ex – the discipline that has especially [dealt] with the exact clinical condition of the plaintiff.
>
> He's a GI for more than 40 years with vast experience. He's dealt with thousands of patients exactly with the clinical scenario of the plaintiff. He has been in that clinical [circumstance] and continues to be in those clinical circumstances in terms of whether or not those patients, more probably than not, would end up in the OR and that is his opinion in this case.

Thus, in response to the motion for summary disposition, plaintiff presented the same argument to the trial court already presented to and addressed by this Court in the interlocutory appeal. The trial court granted the motion for summary disposition, reasoning, in relevant part:

> [I]n medical malpractice actions, expert testimony is required to establish the element of causation. . . . Evidence shows that the plaintiff's only gastroenterological expert, Dr. Michael Duffy's causation testimony was stricken on May 8th, 2023, after a hearing on defendant's motion in limine as the Court found that Dr. Duffy was not qualified to address what a surgeon could have or would have done had plaintiff been referred to one earlier.
>
> While plaintiff requests that this Court reconsider its ruling, the Court has already denied reconsideration, and this ruling was not overturned by plaintiff's appeal. Therefore, plaintiff does not have an expert to testify as to causation anymore and now cannot prove the element of causation. As such, summary disposition is appropriate.

On appeal, plaintiff now argues:

---

600.2169(1) did not apply in this case, all expert testimony in a medical malpractice action is subject to the requirements of MCL 600.2169(2). See *Roberts*, unpub op at 5.

This is a straight forward but nuanced legal issue. Does Plaintiff's sole proffered causation expert, Michael Duffy MD, a gastroenterologist of some 40 years['] experience regarding the very clinical issues relevant to this case, have the qualifications to opine that Mr. Roberts more probably than not would have undergone surgery had Dr. Quertermus consulted a surgeon at the time as alleged in the Complaint, thereby avoiding a complete obstruction of his bowel, a colostomy and a reversal of that colostomy.

This is the precise question posed by plaintiff in the interlocutory appeal, and determined by this Court, namely, that Dr. Duffy did not have the qualifications to testify regarding plaintiff's theory of causation, and that Dr. Duffy in fact demonstrated that he was unable to testify on this issue. This Court stated:

Plaintiff's theory of "but for" causation requires evidence regarding what a reasonable surgeon would have done had Dr. Quertermus made a referral in February 2016. See *Skinner*, 445 Mich at 163. Given this chain of causation, plaintiff needed to offer expert testimony opining the necessity of performing surgery earlier than May 2016. Plaintiff potentially could have established this evidence through the testimony of the surgeon who performed his eventual surgery or an uninvolved qualified expert.

* * *

Dr. Duffy's lack of qualifications to opine on this subject was demonstrated by the inconsistent testimony he offered during his deposition.

* * *

Moreover, Dr. Duffy demonstrated a lack of knowledge regarding the details of a surgeon's decision-making process. . . . The internal inconsistencies in his testimony and inability to answer questions about the decision to perform surgery demonstrate that Dr. Duffy did not have the requisite knowledge to opine what a reasonable surgeon would have done in this case. [*Roberts*, unpub op at 3-6.]

In accordance with this Court's prior opinion, the trial court correctly determined that Dr. Duffy was not allowed to testify on the issue of causation, that is, regarding what a surgeon likely would have done if plaintiff had been referred to a surgeon in February 2016. Because plaintiff did not offer an expert on the causation element of his medical malpractice claim, the trial court did not err by granting defendants summary disposition.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

-9-