*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF WILLIAM JONES by TAMBORA
JONES, Personal Representative,

UNPUBLISHED
April 17, 2026
3:08 PM

Plaintiff-Appellant,

v

No. 373596
Wayne Circuit Court
LC No. 22-014673-NH

BOULEVARD TEMPLE CARE CENTER,
BOULEVARD TEMPLE CARE CENTER, LLC,
HENRY FORD HOSPITAL, and HENRY FORD
HEALTH SYSTEM,

Defendants-Appellees.

Before: GADOLA, C.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, the Estate of William Jones, by its personal representative, Tambora Jones, appeals by delayed leave granted the trial court's order granting defendants, Boulevard Temple Care Center, Boulevard Temple Care Center, LLC, Henry Ford Hospital, and Henry Ford Health System, summary disposition of plaintiff's claim under MCR 2.116(C)(10). We affirm.

## I. FACTS

This is a case alleging medical malpractice. Plaintiff claims that defendants' nursing staff and other agents and employees breached the applicable standard of care when caring for plaintiff's decedent, William Jones (Jones), on various dates from January 14, 2020 through March 24, 2022. Plaintiff alleges that as a result of the below-standard care, Jones developed pressure ulcers, that defendants' nursing staff failed to properly treat the ulcers, and that as a result Jones suffered pain, emotional and mental distress, loss of mobility, lost wages and benefits, and a drastic deterioration of his health.

Specifically, plaintiff alleges that on January 14, 2020, Jones was 71 years old when he was admitted to defendant Boulevard Temple Care Center (Boulevard), which is owned by

-1-

Boulevard Temple Care Center, LLC, for rehabilitative and nursing care.  He allegedly was assessed as having a mild risk for skin integrity with a Braden scale assessment of 14.[1]

Plaintiff alleges that on April 10, 2020, Boulevard nursing staff documented that Jones had no unhealed pressure injuries.  That same day, Jones was taken to defendant Henry Ford Hospital because he had hypoxia (low oxygen) and bradycardia (low heart rate).  At the hospital, Jones was found to have a sacral decubitus ulcer (a pressure injury on the sacrum at the base of the spine) described as "unstageable" and a "stage 1" pressure ulcer on his right heel.  On April 24, 2020, Jones was discharged from Henry Ford Hospital and returned to Boulevard where he continued to receive nursing care.  On April 25, 2020, Boulevard nursing staff allegedly assessed Jones with a Braden scale score of 16, indicating a mild risk of pressure injuries despite the fact that Jones had pressure injuries.

Boulevard nursing staff allegedly documented the existence, size, and location of the pressure wounds on April 27, 2020, April 28, 2020, and May 4, 2020.  On May 6, 2020, Jones was assessed with a Braden score of 17, indicating a mild risk of pressure injuries, and on May 13, 2020, he was assessed with a Braden score of 11, indicating a high risk.  From April 25, 2020 to May 17, 2020, Jones allegedly was assessed as having possible infection in the wounds, but on May 21, 2020, Jones' sacral wound allegedly was assessed as Stage III with no infection.

On May 30, 2020, Jones was sent to Henry Ford Hospital where allegedly it was documented that Jones had an open ulcer on the right heel and also a Stage IV decubitus ulcer on his sacrum with packing in place.   On May 31, 2020, the hospital allegedly documented that one of the wounds was infected.  On June 2, 2020, Jones was discharged to Boulevard.  From June 2, 2020 through June 23, 2020, Boulevard nursing staff allegedly assessed and documented the pressure wounds as stable or improving.

On June 29, 2020, Jones was admitted to Henry Ford Hospital due to abnormal hemoglobin; at the hospital the sacral wound allegedly was noted to be large, pink and clean.  He returned to Boulevard the same day.  From June 30, 2020 through December 4, 2020, Boulevard nursing staff allegedly continued sporadically to document the existence of Jones' pressure wounds.

Thereafter, Jones allegedly was admitted to Henry Ford Hospital repeatedly; on December 5, 2020,[2] Jones allegedly was taken to the hospital for replacement of a feeding tube; from

---

[1] The Braden Scale is an evidence-based tool used by healthcare professionals to assess a patient's risk of developing pressure injuries.  A patient's overall Braden score of 15-18 indicates a mild risk of skin breakdown, while a score of 13-14 indicates a moderate risk.  Triplett, *The Braden Scale and How it Predicts Pressure Injury Risk*, Wound Care Education Institute <https://www.blog.wcei.net/braden-scale-score-for-predicting-pressure-injury-risk> (published March 5, 2024) (accessed March 27, 2026).

[2] Plaintiff's complaint alleges that Jones was discharged from Henry Ford Hospital on December 5, 2020 to his home with Home Healthcare.  By contrast, Boulevard asserts on appeal that Jones was not discharged home with Home Healthcare until July 28, 2021.

December 31, 2020 to January 7, 2021, for treatment of a pressure ulcer on the coccyx; on January 9, 2021 for constipation; on January 31, 2021, for feeding tube replacement; on May 28, 2021, for "feeding tube issues;" on May 29, 2021, for feeding tube adjustment; from July 20, 2021 through July 28, 2021, for altered mental status and unresponsiveness; and on October 5, 2021, for hematuria (blood in the urine). Jones was hospitalized again on March 21, 2022, at which time the hospital nursing staff reported that Jones had a pressure ulcer on his coccyx and on his left hip. On March 24, 2022, Jones died of hypertensive cardiovascular disease.

Plaintiff filed the complaint initiating this lawsuit on December 9, 2022, alleging that defendants' nursing staff were negligent in their care of Jones, that defendants' negligent care of Jones' resulted in Jones developing pressure ulcers, and that defendant's failure to prevent, identify, and properly treat Jones' pressure injuries led to the exacerbation of the ulcers and the deterioration of Jones' health. Plaintiff supported the complaint with the Affidavit of Merit of Nurse Angela Portillo-Sanchez opining that the alleged actions and inactions of defendants' nursing staff constituted breach of the nursing standard of care and resulted in Jones' injuries.

After the close of discovery on January 19, 2024, defendants deposed Nurse Portillo-Sanchez. During the deposition, Portillo-Sanchez was unable to answer a variety of questions regarding Jones' medical records. Portillo-Sanchez was not able to testify regarding basic facts of Jones' injuries, such as when the wounds occurred, the size and condition of the wounds, and the rate at which the wounds improved or worsened. Portillo-Sanchez testified that Jones' level of risk for developing pressure injuries was very high and that this risk repeatedly was incorrectly evaluated by defendant's nursing staff, but she could not identify any specific occasion when an incorrect evaluation occurred or identify any nurse who incorrectly evaluated Jones or who failed to recognize Jones' risk factors for the development of pressure injuries. She further testified that the nursing staff did not meet the standard of care in their assessment and documenting of Jones' skin condition, but Portillo-Sanchez could not point to any particular place in the medical record where this occurred nor could she identify which nurse had failed to meet the standard of care.

The Boulevard defendants moved to strike the testimony of Portillo-Sanchez under MRE 702 and MCL 600.2955 and moved for summary disposition under MCR 2.116(C)(8) and (10). Defendants Henry Ford Hospital and Henry Ford Health System (the Henry Ford defendants) also moved for summary disposition under MCR 2.116(C)(10),[3] arguing that there was no genuine issue of material fact regarding whether the standard of nursing practice had been breached because Portillo-Sanchez had been unable to identify when, how, or by whom the standard of care had been breached.

At the conclusion of the hearing on the motions the trial court determined that the testimony of Portillo-Sanchez was inadmissible under MRE 702 and MCL 600.2955, and the trial

_____

[3] The Henry Ford defendants also moved for partial summary disposition under MCR 2.116(C)(7) arguing that they were entitled to summary disposition of plaintiff's claims that allegedly occurred between April 10, 2020 and June 29, 2020, under Michigan's Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471, *et seq.* The Boulevard defendants concurred in the motion for partial summary disposition under MCR 2.116(C)(7). The trial court's dismissal of plaintiff's complaint did not address this basis for summary disposition.

court therefore struck Portillo-Sanchez as plaintiff's expert witness. Plaintiff requested permission to proceed to trial with one of two other experts identified by plaintiff's witness list. The trial court denied plaintiff's request reasoning that plaintiff had not provided the affidavit of merit of either of the alternative experts and that discovery had closed. The trial court dismissed plaintiff's complaint against all defendants, and subsequently denied plaintiff's motion for reconsideration.

This Court granted plaintiff's delayed application for leave to appeal the trial court's order granting defendants summary disposition. *Estate of William Jones v Boulevard Temple Care Center*, unpublished order of the Court of Appeals, entered April 28, 2025 (Docket No. 373596).

## II. DISCUSSION

Plaintiff contends that the trial court erred by granting defendants summary disposition and by striking the expert testimony of Portillo-Sanchez. We disagree.

We review a trial court's decision to grant or deny a motion for summary disposition de novo. *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024). Although the trial court in this case did not state under which section of MCR 2.116(C) summary disposition was granted, because the trial court considered evidence outside of the pleadings,[4] we evaluate the trial court's decision as if the motion were granted under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is warranted when no genuine issue of material fact exists. When considering the trial court's grant or denial of summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party, *El-Khalil, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019), and will find a genuine issue of material fact if the record leaves open an issue on which reasonable minds might disagree. *Id*.

We also review de novo the application and interpretation of statutes and court rules. *In re L Ott*, 344 Mich App 723, 735; 2 NW3d 120 (2022). We review for an abuse of discretion the trial court's decision regarding the admissibility of witness testimony. *Danhoff v Fahim*, 513 Mich 427, 441; 15 NW3d 262 (2024). The trial court abuses its discretion when it selects an outcome outside the range of principled and reasonable outcomes, and also when it bases its discretionary decision upon an error of law. *Id*. at 442. We review questions of law underlying an evidentiary ruling de novo, *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016), and review for clear error the trial court's factual findings underlying the decision to admit or exclude evidence, *Shivers v Covenant Healthcare System*, 339 Mich App 369, 373-374; 983 NW2d 427 (2021). However, "any error in the admission or exclusion of evidence will not warrant appellate relief unless refusal to take this action appears . . . inconsistent with substantial justice, or affects a substantial right of

---

[4] A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the case based on the factual allegations of the complaint and is warranted when a claim, based upon the pleadings alone, is so unenforceable that no factual basis could justify recovery. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019).

the [opposing] party." *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004) (quotation marks and citation omitted).

To establish a claim of medical malpractice, the plaintiff must demonstrate (1) the applicable standard of care, (2) that the defendant breached that standard, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were proximately caused by the defendant's breach of the applicable standard of care. *Rock v Crocker*, 499 Mich 247, 255; 884 NW2d 227 (2016). "[A] plaintiff's prima facie case of medical malpractice must draw a causal connection between the defendant's breach of the applicable standard of care and the plaintiff's injuries." *Craig*, 471 Mich at 90. "[T]he applicable standard of care is the skill and care ordinarily possessed and exercised by practitioners of the profession in the same or similar localities." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003).

Generally, to establish the standard of care and that the standard of care was breached requires the testimony of an expert witness, *Danhoff*, 513 Mich at 432, unless the breach was so obvious that it is within the common knowledge and experience of an ordinary layperson. *Elher*, 499 Mich at 21-22. Similarly, expert testimony is required to establish causation. *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). The proponent of the testimony of an expert in a medical malpractice action bears the burden of demonstrating that the expert's testimony is relevant and admissible. *Elher*, 499 Mich at 22. The trial court then must "make a preliminary assessment of whether the proposed expert's testimony is scientifically valid and whether the reasoning and methodology upon which the expert bases their testimony can be applied to the facts of the case," which is known as the trial court's "gatekeeping function." *Danhoff*, 513 Mich at 444.

The testimony of any expert testifying in a medical malpractice action about any issue that requires expert testimony is subject to the requirements of MCL 600.2169(2). *Halloran v Bhan*, 470 Mich 572, 578 n 6; 683 NW2d 129 (2004). That statute provides:

In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:

(a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony. [MCL 600.2169(2).]

Regarding the admissibility of expert scientific opinion testimony in a tort action, MCL 600.2955 provides:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and

-5-

the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in the subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

* * *

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in [MCL 600.2169].

In addition, MRE 702 governs the admissibility of expert witness testimony and incorporates the standards for reliability of expert testimony articulated in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). *Danhoff*, 513 Mich at 445. MRE 702 requires the trial court to determine that each aspect of the testimony of the proposed expert witness, including the methodology and underlying principles of the expert's testimony, is both relevant and reliable. *Id*. at 448. The trial court may admit the expert testimony only if it meets the standard of reliability set forth in MRE 702, which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In this case, plaintiff alleged that defendants' nursing staff failed to provide adequate care to Jones and that as a result Jones developed pressure ulcers that were exacerbated by below-standard care by defendants. Plaintiff offered Nurse Portillo-Sanchez as plaintiff's sole medical expert. After deposing Portillo-Sanchez, defendants moved to strike her testimony and also moved for summary disposition under MCR 2.116(C)(8) and (10) on the basis that Portillo-Sanchez was unable to testify knowledgably about Jones' injuries and was unable to identify who had treated Jones, what treatment was provided, and how the standard of care was not met.

The trial court granted the motion striking Portillo-Sanchez's testimony and granted all defendants summary disposition. The trial court reasoned, in relevant part:

Expert testimony is required to establish the standard of care and a breach of that standard as well as causation.

* * *

The cause in fact element generally requires a showing that but for the Defendant's actions, the Plaintiff's injuries would not have occurred. Our Supreme Court explained that to be adequate a Plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation and reaffirmed that [the] Plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the Defendant's conduct, the Plaintiff's injuries would not have occurred.

* * *

In order for expert testimony to be admitted, the witness must possess the necessary knowledge, learning and skill or practical experience that would enable the witness to testify confidently about the area.

* * *

[E]xpert testimony may not be based on mere speculation and there must be facts in evidence to support the opinion testimony of an expert.

* * *

[T]he proponent of expert testimony bears the burden of proving that the contested opinion is based on generally accepted methodology. . . . [T]he guidepost for admissibility is reliability. And trial courts must consider MRE 702 as well as the

statutory reliability factors presented in MCL 600.2955 when determining if an expert is reliable.

\* \* \*

MRE 702 mandates a searching inquiry, . . . Not just [of] the data underlying expert testimony but also [of] the manner in which the expert interprets and extrapolates from that data. Thus it is insufficient for the proponent of [an] expert's opinion to show that the opinion rests on data view[ed] as legitimate in the context of a particular area of expertise such as medicine. The proponent must also show that an opinion based on that data expresses conclusions reached through reliable principles and methodology.

\* \* \*

In this case, it seemed clear that Nurse Sanchez was completely unprepared for her deposition. She was generally unable to answer any questions with specificity and completely failed to tie any alleged malpractice with regards to either of these two defendants in 2020 to Plaintiff's ultimate death two years later in 2022.[5]

Ms. Portillo-Sanchez could not identify which nurses she was critical of at which facility or what [] members violated any standard of care via ADPIE[6] which is the only failure she could articulate.

Nurse Sanchez could not testify to any specific facts of the assessing, diagnosing, planning, interventions and evaluations that she was actually critical of and on what date those breaches occurred.

She indicated that her main work was in long-term nursing care and that she never worked in the ICU. The patients that she worked with are in skilled nursing facilities and long-term care facilities in contrast to the ICU setting that is the basis of this case. And she testified that she was uncertain as to an ICU nurse's actual responsibilities.[7]

---

[5] We note that plaintiff's complaint did not allege that the actions of defendants' nurses resulted in Jones' wrongful death, but rather that their actions and inactions resulted in Jones experiencing pain and suffering and the general deterioration of his health.

[6] ADPIE is an acronym for Assessment, Diagnosis, Planning, Implementation, and Evaluation, a framework used in nursing to provide a structured approach to patient care. Walden University, *The 5 Steps in the ADPIE Nursing Process* https://waldenu.edu/programs/nursing/resource/the-five-steps-in-the-adpid-nursing-process (accessed March 30, 2026).

[7] The record suggests that Jones was sometimes in an ICU and at other times was in long-term care.

Further, [that] there does not appear to be any supporting literature offered by this expert to support her claims, [which] while [] not dispositive, is a factor to be weighed for an expert opinion to be admissible.

With all of these shortcomings, it is difficult to understand how her testimony would assist the trier of fact to understand the evidence or determine a fact [in] issue.

Nevertheless, the Court must consider MRE 702 as well as the statutory reliability factors presented in MCL 600.2955 when determining if an expert is reliable pursuant to the recently published Supreme Court case of *Danhoff* versus *Fahim*. Since neither side contests the witness's qualifications under MCL 600.2169 the Court does not need to focus on her qualifications. To that end, the Court will consider the factors under MRE 702 and MCL 600.2955.

With regards to the MRE 702 factors, A, the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue. This factor favors the Defendants. The Defendants note that Ms. Portillo-Sanchez indicated that her main work was in long-term nursing care and that she'd never [worked] in the ICU. The patients that she worked with are in skilled nursing facilities and long-term care facilities in contrast to the ICU setting that is the basis of this case.

Per her testimony, the primary negligence occurred on 4/10 of 2020 when Mr. Jones was admitted to the ICU with COVID. Further, there does not appear to be any supporting literature offered by this expert to support her claims which again [though] not dispositive is a factor the Court must weigh.

In order for expert testimony to be admitted, the witness must possess the necessary learning, knowledge and skill or practical experience that would enable the witness to testify competently in this area.

Again, when reading this deposition testimony, I must agree with Ms. Martin, it is one of the wors[t] expert depositions I've ever read. And she did little to support any claims of negligence in this case. And while Plaintiff had an opportunity to cross examine her to solidify her knowledge, skill and training, they failed to take that opportunity. And as indicated, discovery is closed and trial is set for two and a half months from now.

Under MRE 702(b), the testimony is based on sufficient facts or data. This again favors Defendant[s]. . . . Nurse Sanchez claims that Defendants violated the standard of care via the ADPIE. However, she could not testify as to any specific facts of assessing, diagnosing, planning, interventions, and evaluation that she was actually critical of. She could not identify any specific nurse that she was critical of or any staff member that violated the care via ADPIE.

As for the pressure wounds specifically, Nurse Sanchez criticizes decedent's Braden's scores in her affidavit of merit and in her deposition, indicates that

Plaintiff was clinically at high risk for pressure injuries despite the scores saying that he was at mild risk. However, she could not give specific examples as to how the scores were deficient nor any date or time that they were deficient nor any specific nurse that there was a deficiency with. Nurse Sanchez could not identify names of the providers who performed inaccurate Braden assessments and who failed to recognize the patient's risk factors for the development of pressure injuries.

With regards to the injuries themselves, Nurse Sanchez could not recall the wound's dimensions or when it appeared. To be adequate, a Plaintiff's circumstantial proof must facilitate reasonable inference of causation not mere speculating . . . . Plaintiff has the burden to establish that the opinion is based on generally accepted methodology. Accordingly, this factor weighs against the Plaintiff.

Factor C, the testimony is a product of reliable principles and methods. This also favors the Defendant. As previously stated, Nurse Sanchez does not appear to be relying on any supporting literature, could not testify as to any specific facts of the assessing, diagnosing, planning, interventions and evaluations she was critical of. She could not give specific examples as to how the decedent's Braden scores were deficient. Again, while the Court does not necessarily doubt the principles and methods in a Braden determination or ADPIE standard of care, the Plaintiff does not provide any evidence or literature explaining either methodology. A party may not leave it to this Court to search for a factual basis to sustain or reject their position.

Factor D, the expert's opinion reflects a reliable application of the principles and methods to the facts of this case. This also favors the Defendant. As stated previously and for the reasons stated previously, it's [not] known what principles or methods [the witness] used as a basis of her testimony. It's [not] known, therefore, whether the expert's opinion reflects a reliable application of the principle[s] and methods to the facts of this case as she could not indicate any specific facts that were the basis for any negligence and at no time was she able to tie failures on 4/10 of 2020 to Mr. Jones' ultimate death two years later.

The trial court then evaluated the testimony of Portillo-Sanchez under MCL 600.2955 and concluded that under subsection (a), whether Portillo-Sanchez's opinion had been subjected to scientific testing and replication, the expert did not offer any literature to support her opinion that defendants violated the standard of care. Under subsection (b) of the statute, whether the expert's opinion was subjected to peer review publication, the trial court similarly concluded that it was not. Under subsection (c) of the statute, whether the expert's opinion was consistent with generally accepted standards governing the application and interpretation of a methodology or technique, the trial court determined that the method or principle serving as the basis of Portillo-Sanchez's opinion was unknown. Under subsection (d), the error rate of the opinion and its basis, the trial court again determined that this information had not been provided. Under subsection (e), whether the expert's opinion is generally accepted within the relevant expert community, the trial court similarly determined that the witness did not testify regarding this factor. Under subsection (f), whether the basis for the opinion is reliable, the trial court found that the witness failed to testify

as to any specific facts that indicated a violation of the standard of care, failed to identify the nurses or employees that allegedly violated the standard of care, and failed to explain how the Braden scores were deficient. Under subsection (g), whether the expert's opinion or methodology is relied upon by experts outside of the context of litigation, the trial court found that the witness had failed to present evidence to establish this factor. The trial court concluded:

> Ultimately, in reviewing Nurse Sanchez's testimony with regards to the Defendants' acts of alleged malpractice, it does not appear to have either a sufficient basis of fact or to be the result of reliable principles or methods. Further, Plaintiff has failed to provide any support that Ms. Sanchez's opinions have any basis in fact or that her opinions are the result of reliable principles and methods and that [they] were applied in a reliable [manner]. Accordingly, the Court finds that Nurse Sanchez's testimony is inadmissible under both MRE 702 and MCL 600.2955 and [the Court] is striking Plaintiff's expert as a result. And because we are so close to trial and no other expert by the Plaintiff has been named, they have no expert to proceed with trial in this matter, to the best of the Court' information, knowledge and belief.

On appeal, plaintiff does not dispute that Portillo-Sanchez was unable during her deposition to testify regarding Jones' alleged injuries, the alleged breach of the standard of care, and causation. Plaintiff argues, however, that it should have been permitted to present Portillo-Sanchez as a witness at trial before the trial court determined to strike her testimony. However, as discussed, the trial court's gatekeeping function requires the trial court to determine whether the expert's testimony will meet rigorous requirements of admissibility before admitting the evidence at trial. The trial court may not abandon its gatekeeping function and must prevent the jury from hearing inadmissible or irrelevant testimony. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). The trial court has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable when determining whether to admit expert testimony. *People v Lemons*, 514 Mich 485, 504; 22 NW3d 42 (2024). Here, we agree that the trial court properly determined that Portillo-Sanchez's testimony was not based on sufficient facts and did not reflect a reliable application of the principles and methods to the facts of this case as required under MRE 702.

Plaintiff also argues that the trial court should have permitted it to call as an expert witness one of the two other experts named in plaintiff's witness list. We note that in its brief on appeal plaintiff provides no citation to authority in support of this assertion and provides no meaningful argument on this issue. Plaintiff therefore has abandoned this issue. See *Farmers Ins Exchange v Hudson Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369452); slip op at 9 (A party abandons a claim when the party fails to provide meaningful argument); *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019) (A party abandons an issue when the party simply announces its position and fails to provide proper citation to authority). Moreover, we detect no abuse of discretion in the trial court's decision to deny plaintiff's proffer of a new expert witness after the close of discovery. We further conclude that plaintiff has not demonstrated that the asserted error in the exclusion of the witness' testimony was inconsistent with substantial justice or affected a substantial right.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly